## THE JOHN BOSSERT.

(District Court, S. D. New York. November 23, 1906.)

COLLISION—SCHOONER LYING TO AND OVERTAKING SCHOONER—LIGHTS—NEGLIGENT LOOKOUT.

> The schooners Charles A. Witler and John Bossert, each laden with lumber, were sailing northward off cape Hatteras when the Witler, which had passed the Bossert during the day and was leading, lay to on the port tack at about 8 in the evening. Shortly thereafter she was struck by the Bossert which approached on the same tack at a speed of about 4 knots. For 15 or 20 minutes prior to the collision the Witler had exhibited at her stern a white light consisting of a globe lantern, unscreened, but such light was not seen by the lookout of the Bossert until too late to avoid the collision. *Held*, that such light was a sufficient compliance with article 10 of the international navigation rules (Act Aug. 19, 1890, c. 802, 26 Stat. 320 [U. S. Comp. St. 1901, p. 2866]), and that the collision was solely the fault of the Bossert in failing to maintain an efficient lookout.

In Admiralty. Suits for collision.

Hyland & Zabriskie, for libellant Bromwell.

Horace L. Cheyney, for Insurance Company of North America, underwriter on hull of Witler, intervening libellant.

Butler, Notman & Mynderse, for Eddy Lake Cypress Co.

James J. Macklin, for the Bossert.

ADAMS, District Judge. This action was brought by Charles A. Bromwell, the master of the lumber laden schooner Charles A. Witler, to recover from the schooner John Bossert, the loss occasioned to his vessel, including the freight, and to himself and the crew, from a loss of their personal effects, by a collision with the Bossert about 25 or 30 miles from the Diamond Shoals Lightship, off Cape Hatteras, about 8 o'clock P. M. on the 29th of August, 1905. The Insurance Company of North America, an underwriter on the hull of the Witler to the extent of $7,500, intervened to protect its interest. The Eddy Lake Cypress Company filed a libel to recover the value of the lost lumber. The total claims amounted to about $30,000.

The Witler was a new 3 masted schooner 117 feet long. She took in her cargo of about 250,000 feet on the Waccamaw River, South Carolina, for delivery in Baltimore, Maryland. About 100,000 feet were loaded on and the remainder under deck. She overtook the Bossert about 10 or 11 o'clock in the morning of the day in question and they continued in company during the day, the Witler passing ahead about noon. She thereafter, up to the time of collision, kept in the lead. As night came on, the Witler gradually reduced sail and about 7 o'clock began taking in the last of the sails and at a quarter before 8 she hove to on the port tack under a reefed spanker. While so lying, the Bossert came on and struck her on the port side, causing such injuries that all the crew of the Witler took to a small boat, in which they remained during the night, and in the morning went aboard of the Bossert, which had furled her sails after the collision and remained near at hand.

The Bossert was also a new schooner, but had 4 masts. She was about 180 feet long. She took in her cargo of lumber, under and on deck, at Georgetown, South Carolina, and was bound to New York. She admits that the Witler passed her in the afternoon and that the collision took place as stated. The wind at the time of collision was northerly, of a velocity of 25 or 30 miles an hour. The Witler as she was lying to was headed north-east by east or east north-east. The Bossert was headed north-east by east and making an east north-east course. She was going at the rate of 4 to 5 miles an hour under a reefed spanker, mizzen, mainsail, foresail, jib and staysail.

The questions in the case are: (1) whether the Witler exhibited a proper light astern and (2) whether the Bossert maintained a proper lookout.

The provisions of law with respect to the subjects in controversy are:

"Art. 10. A vessel which is being overtaken by another shall show from her stern to such last-mentioned vessel a white light or a flare-up light.

"The white light required to be shown by this article may be fixed and carried in a lantern, but in such case the lantern shall be so constructed, fitted, and screened that it shall throw an unbroken light over an arc of the horizon of twelve points of the compass, namely, for six points from right aft on each side of the vessel, so as to be visible at a distance of at least one mile. Such light shall be carried as nearly as practicable on the same level as the side-lights." Act Aug. 19, 1890, c. 802, 26 Stat. 320 [U. S. Comp. St. 1901, p. 2866].

"Art. 29. Nothing in these rules shall exonerate any vessel or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case." 26 Stat. 320 [U. S. Comp. St. 1901, p. 2871].

With regard to light, the Witler alleges in her libel as follows:

"Fourth: That the schooner 'Charles A. Witler' had both her side lights properly set and brightly burning and exhibited to the schooner 'John Bossert,' from her stern a white light in a lantern throwing an unbroken light over an arc of the horizon of at least twelve points of the compass, that is to say, for at least six points from right aft on each side of said vessel, so as to be visible for at least for a distance of a mile, and your libellant's said schooner also exhibited to the said schooner 'John Bossert' an electric flare-up or flash light from her stern and in addition thereto the captain and crew of your libellant's

said vessel also called out to those in charge of the said schooner 'John Bossert' to keep clear of the 'Charles A. Witler.' "

The allegation of cries from the Witler, is stoutly denied by the Bossert. It is certain that, if given, they did not reach those in charge of the Bossert's navigation in time to be of any avail and may be disregarded.

There is some testimony as to the exhibition of an electric light but it was not seen on the Bossert. It appears that it was a small light principally used about the deck for seeing the log or other objects near at hand, and was not at all in compliance with the law above quoted. Even if used to throw a light on the spanker, as stated by the witnesses for the Witler, the light was not seen on the Bossert and it gave her no notice of the presence of the Witler in her path. It may also be disregarded.

The question then turns upon the effect of an exhibition of a light from a globe lantern. This light was seen on the Bossert. It is claimed by the Witler that it was exhibited 15 or 20 minutes before the collision by the master of the Witler holding it in his hand, sometimes at an elevation of several feet, and by being placed upon the top of the cabin. It was an ordinary globe lantern showing a light all around the horizon. It is claimed on the Bossert that it was not exhibited until the collision was imminent.

The light may be considered, for the purposes of this case, as complying with the provisions of Article 10 regarding the duty of the Witler to exhibit a white light to an overtaking vessel. This light was not strictly within the terms of the law, as it was not obscured from forward but that seems immaterial. There was not in any sense a flare-up light.

At the time of the approach of the Bossert, about 8 bells, she was changing her watch. The lookout, who was on duty until 8 o'clock, testified that he went on watch at 6 o'clock P. M. and at 8 o'clock was relieved; that at 10 minutes to 8, he went to the toilet room about 3 yards from the forecastle head and returned there; that before he left for the toilet room and after his return therefrom he was quite alone on the forecastle head; that at 8 o'clock or 10 minutes before 8, he went below and called the men of the watch who were to come on duty at 8 o'clock; that he sounded the bell, due at 10 minutes before 8, and immediately afterwards, went and called the men. It is somewhat uncertain just what he did but in any event there is no claim that he gave any warning of the Witler's presence. It may be that he did not see her light owing, possibly, to defective eyesight. He was closely examined in this connection with the aid of a standard optician's chart and made several mistakes with respect to the letters contained on the chart. His testimony, as it reads, is not at all satisfactory with respect to the performance of the important duty with which he was intrusted and it is probable that he failed to notice the light by reason of inattention, even if he were able to see it.

The testimony from several witnesses on the Witler shows that the light was exhibited by her for a considerable space of time, estimated at from 15 to 20 minutes. The approach of the Bossert was observed

by those on the Witler's deck and it is incredible that they would have supinely waited until the Bossert was in dangerous proximity before they exhibited a light to warn her of the presence of the Witler in her path and yet that is what the Bossert would have the court believe.

That the light on the Witler was seen from the Bossert just before the collision is admitted but the latter claims it was supposed to be a steamer's light and that there was no necessity for action on the Bossert's part because a steamer could take care of herself. This was a wrong supposition and does not afford any excuse for the Bossert's neglect. There was nothing to indicate that the light came from a steamer and more careful observation would have shown that such an assumption was erroneous.

The lack of a careful lookout on the Bossert before 8 o'clock sufficiently accounts for this collision. The Witler's light was first seen by the mate in his watch from aft when he accidently looked under the sail by stooping. He then went forward but even when he reached the forecastle, received no report. The first lookout admits that he never saw the light and says that when he was relieved by the lookout coming on duty at 8 o'clock, told him every thing was clear. The new lookout testifies that he did not see any light at the time but did about half a minute later, two or three ship's lengths away, and says he told the mate, who was standing on the forecastle head a yard away. As mentioned above, the mate said that he first saw the light by looking under the spanker sail when he was aft and then went forward. There is no way of reconciling the discrepancy. If the mate's account be deemed correct, and it seems to be entitled to more credence than the lookout's, it tends to confirm the absence of proper observation on the second lookout's part and reinforce the contention of the Bossert's fault in this respect.

It is said by the witnesses from the Witler that the Bossert's approach was observed for several minutes, said to be 15 or 20, before the collision and the Witler's light was exhibited during that time. The Bossert was sailing probably at the rate of 4 knots an hour, or 400 feet per minute and she must have been at least a knot away when her lights were first observed by the Witler. There can scarcely be a doubt that considerable time elapsed during which the Witler's light was visible and that there was ample time for the Bossert to have steered clear. When the light was first noticed on the Bossert, she was too near for effective measures of avoidance and the collision occurred through her fault in failing to see in due time a properly exhibited light.

The abandonment of the Witler after the collision was justified by her condition from the blow. Although she survived for several days, she was not in a condition to be navigated and the crew cannot justly be criticised for leaving her.

There will be decrees for the libellants, with orders of reference.