## THE PUTNEY BRIDGE.

### THE M. I. MANDAL.

(District Court, D. Maryland. February 1, 1915.)

1. COLLISION ☞37 — STEAM VESSELS CROSSING — VIOLATION OF STARBOARD HAND RULE.

The steamships Putney Bridge and Mandal, on crossing courses, came into collision at sea at night a few miles east of Cape Henry. The night was dark, but clear, and the lights of each should have been seen by the other in ample time; but the Mandal did not see the lights of the other vessel, nor give any signal, until a very short time before the collision, when she signaled her intention to cross ahead, although the Putney Bridge was on her starboard side, which signal was not answered. The Putney Bridge kept her course and speed, as required by the rules. *Held*, that she was not in fault for not answering the signal or for not changing her course under the circumstances, having the right to expect, until it was too late, that the other vessel would obey the rule; that the Mandal was solely in fault for not paying proper attention to the lights and for violation of the starboard hand rule, which required her to keep out of the way and not to cross ahead.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 34–36; Dec. Dig. ☞37.]

2. COLLISION ☞41—FAULT—FAILURE TO ANTICIPATE VIOLATION OF RULES.

The burden of showing that a vessel which was navigated in obedience to the rules could have avoided a collision due to the fault of the other rests on the latter, and she will not be held in fault if her master exercised the sound judgment of a competent navigator.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 41; Dec. Dig. ☞41.]

In Admiralty. Suit for collision by A. Westergaard, master of the steamship M. I. Mandal, against the steamship Putney Bridge, E. T. Atkins, master, and cross-libel. Decree in favor of the Putney Bridge.

Daniel R. Randall, of Annapolis, Md., and R. E. Lee Marshall, of Baltimore, Md., for the M. I. Mandal.

Convers & Kirlin, J. Parker Kirlin, and William H. McGrann, all of New York City, and Ritchie, Janney, Griswold & Hamilton and Robertson Griswold, all of Baltimore, Md., for the Putney Bridge.

ROSE, District Judge. [1] On November 26, 1914, at a few minutes after 5 a. m., the Danish steamship M. I. Mandal was in colli-

sion with the British steamship Putney Bridge at a point in the Atlantic Ocean about 20 miles east of Cape Henry. The night was dark, but clear. The ships came together at about right angles, the Mandal striking the Putney Bridge a little aft of amidships. Considerable damage was done to each vessel. Each libeled the other. The cases were consolidated and have been tried together. None of the witnesses were heard in open court. All their testimony was taken on deposition. The Putney Bridge was in ballast bound from Algiers to Baltimore. The Mandal was carrying a cargo of grain from the latter port to Copenhagen. There is no question that the Putney Bridge was on a course west northwest, and was making about nine knots an hour. Neither her course nor speed were changed at any time between the period at which she first saw the Mandal and the time of the collision. The Mandal was making about eight knots an hour. According to the allegations in her pleadings, she was on a course east by north. Her helmsman says he does not know what her course was; that he kept her on the course on which she was sailing when he took charge of the wheel. The captain says that when he went below about 4 o'clock the course was east by north one-quarter north, and the mate testifies he looked at the compass and knows that that was the course upon which she was proceeding shortly before the collision. On the other hand, from the direction in which each of the ships bore to the other, as testified to by all the witnesses on both sides, it is demonstrably impossible that she should have been on such course. Her very able counsel, candidly dealing with the problems raised by the testimony, has demonstrated that her course must have been somewhere between northeast by north one-quarter east, and northeast by north one-quarter north. There is no discoverable reason why she should have taken any such direction, but it seems to be certain that she did. This fact would itself seem to indicate that her navigation was not being conducted at the time with even ordinary care and skill. Her lights were seen from the Putney Bridge about 17 minutes before the collision. According to the testimony of her witnesses, they did not see those of the Putney Bridge earlier than about 4½ minutes before the ships came together. The lookout and the wheelsman claim that they first saw a very faint point of white light which they supposed was a vessel four or five miles away; that almost immediately it brightened out into the masthead light of a steamer, and they then saw that it was not over three-quarters or a mile away; that they saw for a moment both the steamer's green and red lights, and then the green light was obscured and was not afterwards seen by them. The officer in charge of the navigation of the ship did not see the white light while it was dim, nor the green light at all. That the Putney Bridge was equipped with excellent lamps, that they were in perfect order and were burning brightly throughout the entire night, is overwhelmingly proved. That they were not seen from the Mandal many minutes before they were, I am persuaded was owing to the lack of attention on the part of those on the deck of the latter.

The officer in charge of the Mandal, at some time after he saw the lights and before the collision, blew two blasts and put his helm hard astarboard with the intention of passing across the bow of the Putney

Bridge. He says this was in his judgment the only course he could take to avoid all risk of collision. At some time after he gave the two blast signal, he blew three blasts and reversed his engines. As the Mandal was the burdened vessel and bound not to cross the bow of the Putney Bridge, its fault is clear. On its behalf it is, however, argued that the Putney Bridge also failed in its duty by not taking proper precautions on its part to prevent the collision. What it should have done, if anything, depends in some measure upon the time at which the Mandal gave the two blast signal. As usual in such cases, the witnesses estimate the time which elapsed between this signal and the collision differently, and there is no agreement on that question even among all the witnesses on the same ship. I am persuaded, however, from the various circumstances in evidence, and which it is unnecessary here to recapitulate, that there was the shortest of short intervals between the blowing of the two blasts and the blowing of the three, and that very little time elapsed after the three blast whistle before the ships were together.

The Putney Bridge neither gave nor answered any signal, and by the international rules was not required so to do. The officer in charge of her navigation kept her on her course and speed, as under ordinary circumstances the privileged vessel should be kept. There was no signal which he could give that would indicate that that was what he proposed to do. His giving none indicated that his intention was to adhere to the rules. Until the vessels were close together, there was no reason for him to assume that the Mandal would not do what the laws of navigation required she should do. I think that, when she indicated by her two-blast signal that she proposed to do something else, the vessels were so close together that it was exceedingly doubtful whether anything which then could have been done by the Putney Bridge would have prevented the collision, and certainly it could not have been clear to the officer in charge of the Putney Bridge at that time that any possible course would have obviated, or even reduced, the risk of the ships coming together. In the exercise of his best judgment, the officer in command of the Putney Bridge believed that his best chance, even then, to escape an accident, was to maintain his course and speed. He was not far wrong in this. A quarter of a minute more would have carried him clear of danger.

[2] There is here presented a case in which one of the vessels has been navigated with what appears to be a great lack of care, skill, and watchfulness, and has acted in direct defiance of the rules of navigation. Even, under such circumstances, if her intention to persist in so doing is made clearly manifest in time for the other ship to avoid the danger thus created, it is the duty of that other so to do. But the burden of showing that the otherwise innocent vessel could have rendered harmless the fault of the guilty rests on the latter. All doubts in such case must be resolved in favor of him who has obeyed the rules. Whether he neglected something he should have done must be determined, not by the result, but by the situation as it presented itself to him at the time. In solving it he is not required at his peril to forecast the future or to display intuitive genius. If he exercised the sound judgment of a competent navigator, he has done all that can

be required of him. I am not prepared to hold that, measured by this standard, the officer in charge of the Putney Bridge was in fault. The Mandal must bear the entire loss resulting from this collision.