## THE STIMSON.

## THE NORTH LAND.

(District Court, E. D. Virginia. March 18, 1919.)

1. COLLISION ⬡⟿45—STEAM AND SAILING VESSELS CROSSING—FAULT.

A collision at sea on a clear night, between a schooner, which showed regulation lights and properly kept her course and speed, and a steamship on a crossing course, *held* due solely to the fault of the steamship in failing to sooner see the schooner's lights, and in proceeding thereafter without change of course at full speed of 17 miles an hour until 2½ minutes before collision.

2. COLLISION ⬡⟿22—LIABILITY—INEVITABLE ACCIDENT.

A steamship *held* not exonerated from liability for a collision, on the ground of inevitable accident, because of the breaking of the connecting shaft of the steering gear, immediately before collision, although from a latent defect, where she was the burdened vessel and should have acted sooner to avoid risk.

In Admiralty. Suit for collision by W. A. Bodden, master of the schooner Stimson, against the steamship North Land. Decree for libelant.

Hughes, Vandeventer & Eggleston, of Norfolk, Va., for libelant.

Haight, Sanford & Smith and Henry M. Hewitt, of New York City, and Loyall, Taylor & White, of Norfolk, Va., for respondent.

WADDILL, District Judge. The collision, the subject of this litigation, occurred on the Atlantic Ocean, on the early morning of the 13th of October, 1918, between 4 and 4:30 o'clock, some 13 miles southeast of Hog Island Light, between the Stimson, a four-masted schooner of the burden of 693 tons, and the steamship North Land an ocean-going passenger ship of 3,282 gross tons. The vessels were en route from New York to Norfolk; the schooner on a course southeast half east, and the North Land on a course southwest three-quarters south, with the weather good, wind moderate, sea smooth, and the night clear.

[1] The schooner's case briefly is: That while on the starboard tack, in the vicinity in question, and proceeding at about 2½ knots an hour, she observed the masthead light of the steamship some 8 to 10 miles away, bearing aft of her port beam, and subsequently, and when more than 2 miles away, she saw the steamship's green light. That at the time the schooner was provided with a skilled and competent crew, in charge of an experienced master, all at their proper stations, and efficiently performing their respective duties, with her running lights properly set and brightly burning. That upon observing the steamship's white light, being partly in the position of an overtaken vessel, she at once caused her regulation riding light for approaching vessels to be put out, placing the same in the most conspicuous position on the companionway of the after cabin, which was the best position in which it could be placed, and was in full view of the approaching steamship, and should have been seen 6 to 8 miles away. That in addition, as the steamship continued to approach, the schooner caused an electric

light to be waved, and its light flashed upon her sails, to further attract the attention of the approaching steamship, and she kept her course and speed. That notwithstanding the plain obligation imposed upon the North Land, the burdened vessel, to avoid collision, as well as the risk thereof, with the overtaken vessel, the schooner, she continued to approach her at a rapid rate of speed, claimed to be 17 miles an hour, and ran into and collided with the Stimson, striking her about 30 feet aft of her stem on the port bow, seriously cutting into and crushing through the schooner from her rail down below to her water line, causing great damage, for the recovery of which this libel was filed.

The schooner further charges that the steamship was without a lookout properly stationed; that she was in charge of incompetent and unskillful navigators; that she failed to keep out of the way of the schooner, or to shape her course so as to avoid crossing ahead of her and pass under her stern; that she failed to slacken her speed, stop and reverse, and proceeded at a too rapid rate of speed; and that she, being the overtaking vessel, should not have collided with the schooner at all, but have avoided her by a wide margin.

The respondent in the main admits the circumstances of the two vessels approaching and coming together, as above stated, but contends: (1) That the collision was the result of inevitable accident, in that, when it was too late to avoid the consequences thereof, the connecting shaft of the steering gear broke and parted, through a latent defect, causing the injury. (2) That the Stimson was in command of an incompetent navigator, without a proper lookout, and that she omitted to exhibit her white or stern light in sufficient time to enable the navigators of the steamship to make the proper maneuver to avoid the collision.

The court will first consider the navigation of the Stimson, as bearing upon her fault, or participation in the causes which brought about the disaster. She was the favored vessel, as between herself and the steamship, and unless she was guilty of some fault in navigation, or in some way misled those directing the movement of the steamship, she cannot be held liable. In the view taken by the court of the testimony, the Stimson was in command of competent and efficient officers and crew, and before and at the time of the collision they were properly discharging their duties. They had properly set and burning brightly the regulation lights required by law, and there was no reason that the same should not have been seen and observed in ample time to have enabled the steamship to avoid either collision or the risk thereof with the Stimson, which the evidence shows maintained its course and speed. That the lights of the schooner were set and burning is abundantly established by the testimony, and besides the steamer admits seeing the lights in ample time to have avoided the collision, with the exercise of proper care on the part of her navigators, but for the defect in the steering gear. She also admits seeing the stern or white light on the schooner, from half to three-quarters of a mile away, and the red light for at least half a mile. This establishes the existence and sufficiency of the lights, and why the same were not

seen earlier is most probably attributable to the inefficiency of the steamship's lookout. The steamship's navigator states they should have been seen for 2 miles, though he says he did not see them over half a mile, and there seems to be no good reason why they should not have been seen. They were observed from 2 to 2½ minutes before the collision, and in time to have avoided the disaster, but for the parting of the steering gear.

[2] This solves the question of liability against the steamship, since she was the burdened vessel and required to keep out of the way of the schooner (The Richmond [D. C.] 114 Fed. 210, and cases cited), and especially so as an overtaking vessel, unless she can be excused because of the giving way of her steering apparatus from a latent defect therein, when too late to avoid colliding with the schooner. This presents the question of inevitable accident, which, in order for the steamship to avail herself of, must herself be shown to be free from fault. Union S. S. Co. v. New York-Virginia S. S. Co., 24 How. 307, 313, 16 L. Ed. 699; The Colorado, 91 U. S. 692, 763, 23 L. Ed. 379; The Severn (D. C.) 113 Fed. 578; The Maryland (D. C.) 182 Fed. 829, 831; The Richard F. Young (D. C.) 245 Fed. 499, 502, 503; The Reichert Towing Line (C. C. A.) 251 Fed. 214.

The court thinks that the respondent has established its case of the breaking or giving way of the connecting rod of the steamship's steering gear because of latent defects therein, and has proven the exercise of prudence and precaution in procuring the machinery and material for her steering apparatus; but it is not entirely clear when the gear gave way, or when the rod broke. It seemed to have been in operation up to the moment of and after the accident, and there was no signal given, nor indication made, of the existence of the defect until some 2 hours after the accident, during which time there was considerable movement and maneuvering on the part of the steamship. Her master, as testified to by the schooner's master, stated that he had encountered a wreck, which caused the gear to break. The respondent's evidence was to the effect that such a break might occur from a sudden strain or hard jerk placed upon the machinery, and that, when the order was given to port, the ship failed to respond, and, upon a further order to hard aport, she still failed to respond, when the engines were ordered full speed astern. The wheelsman testified that he felt a jolt while turning the wheel to port, and as he gave three or four turns of the same.

It seems hardly probable that the steering gear would have given way from the mere porting or hard aporting the wheel, and it is more likely, assuming it to have parted as now claimed by the respondent, that it did so either when the ship's engines were reversed, immediately preceding the collision, or from the impact when the vessels came together. However this may be, the court does not feel that the North Land can avail herself of the defense of inevitable accident under the circumstances of this case, not being sufficiently free from fault herself. She was charged with the duty of keeping out of the way of the schooner. She was proceeding at 17 miles an hour within 2½ minutes run of the schooner, which was only making about 2½ miles an hour,

the vessels being on crossing courses, and she cannot escape liability for the collision, by having proceeded at full speed ahead first porting and then hard aporting. She should have done more. She was admonished of the danger the moment her navigators saw the white light on the schooner three-quarters of a mile, and the red light, half a mile away, which accentuated the peril, and she should not have placed her wheel hard aport upon the failure of the ship to respond to her helm when placed to port, but should immediately have slackened her speed, stopped, and reversed, if, indeed, she should not have done so the moment the lights were first seen, and given appropriate signals of her maneuver.

There was no excuse for the failure to see the lights earlier, and in time to avoid the collision, as her navigators admit they did; and hence, having taken no timely steps to avert the same, the respondent cannot escape liability for the damage that followed. She should have anticipated just what occurred, and at all events made due allowance for this and such like occurrences, arising incident to the navigation of steam vessels, and losses caused thereby should fall upon those responsible therefor, and not the innocent ship, having no part or parcel in the selection of the steamship's appliances, or seeing to the safe operation of the same. Authorities to sustain this view might be cited almost without number, but only a few need be mentioned. The Carroll, 8 Wall. 302, 305, 19 L. Ed. 392; The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126; Steamship Co. v. Low, 112 Fed. 161, 166, 171, 50 C. C. A. 473; The Richmond, supra, 114 Fed. 208, 213; The Job H. Jackson (D. C.) 144 Fed. 896, 899; same case, 152 Fed. 1021, 82 C. C. A. 332.

The respondent further seeks to escape responsibility by throwing doubt upon the schooner's navigation, suggesting that the stern light should have been put up earlier, and that perhaps her lookout was inefficient, and that the schooner should have departed from the accustomed rule of keeping her course and speed, having regard to the prudential rule which the steamship invokes. They say the schooner should not have continued at full speed on her course, but should have luffed, to avoid the steamer.

The court feels entirely clear that the schooner would not have been warranted in changing her course and speed under the circumstances. While such a thing is sometimes permissible, it would have been a grave act of imprudence to have attempted it on this occasion, and would almost certainly have failed in its object. Nor do the facts, in the court's view, warrant either the contention that those on the schooner, including the lookout, were not efficiently engaged about her navigation, or that the schooner did not properly place its stern light (The John Bossert [D. C.] 148 Fed. 903, 905, affirmed 168 Fed. 1021, 93 C. C. A. 671), and give timely warning to the approaching steamship of her presence.

This defense, or suggestion by the steamship, of dereliction on the part of the schooner, will not suffice to relieve her from liability for the accident, when the testimony shows that the steamship, the burdened vessel, had been guilty of faults amply accounting for, and which

do account for, bringing about the collision. The City of New York, 147 U. S. 72, 85, 13 Sup. Ct. 211, 37 L. Ed. 84; The Victory and The Plymouthian, 168 U. S. 410, 423, 18 Sup. Ct. 149, 42 L. Ed. 519; Foster v. Merchants' & Miners' Transp. Co. (D. C.) 134 Fed. 964, 969; The Kirnwood (D. C.) 201 Fed. 428, 433.

It follows, from what has been said, that the North Land is solely responsible for causing the collision in question, and a decree may be entered so ascertaining.