## THE EDMUND MORAN.

(Circuit Court of Appeals, Second Circuit. June 14, 1910.)

No. 261.

1. COLLISION (§ 123*)—DEFENSES—"INEVITABLE ACCIDENT"—BURDEN OF PROOF.

   To sustain the defense of inevitable accident in a suit for collision, the defendant has the burden of proof, and must show either what was the cause of the accident, and that the result of that cause was inevitable, or he must show all the possible causes and with regard to every one of such possible causes that the result could not have been avoided.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 259–261; Dec. Dig. § 123.*

   For other definitions, see Words and Phrases, vol. 4, pp. 3571–3573.]

2. COLLISION (§ 22*)—DEFENSES—INEVITABLE ACCIDENT.

   A tug came into collision with a canal boat in tow of another tug on a crossing course by reason of the breaking of her steering cable when she attempted to change her course at a distance of 60 to 70 feet from the tow. There was testimony that, even if the cable were sound, it might have been broken by a sudden porting such as was required at that short distance to clear the canal boat. *Held* that such evidence did not sustain the defense of inevitable accident; it not appearing that the tug's course could not have been changed sooner without subjecting the cable to such strain.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 19; Dec. Dig. § 22.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by John Newman and others against the steam tug Edmund Moran, the Moran Towing & Transportation Company, claimant. Decree for libelants (173 Fed. 109), and claimant appeals. Affirmed.

Carpenter & Park, for appellant.

James J. Macklin and De Lagnel Berier, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. May 15, 1908, at about 6:15 p. m., the tide being flood in the North and ebb in the East River, with little or no wind and a clear atmosphere, the tug Edmund Moran left the Battery landing bound down the Upper Bay. At the same time the tug Glen Cove towing two canal boats side by side on a hawser about 125 feet long, with a third canal boat, The Bronx, astern of the port boat of the first tier, was proceeding from the North into the East River. A Pennsylvania tug bound from the East River into the North River with a barge alongside passed between the vessels. In this situation the courses of the Glen Cove and Moran were crossing and it was the duty of the Moran to keep out of the way. When heading for the Bronx and not more than 70 feet away, she undertook to swing some-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes.

six points to starboard to clear the canal boat's stern. Seeing that the tug did not answer her helm, the pilot rang to reverse full speed astern, notwithstanding which he struck the boat loaded with coal violently enough to cut off her stern. His report to the inspectors, made the day after the collision, shows how close the tug must have been to the canal boat, and how fast she must have been going when he discovered that the steering gear would not work. He says:

"I had scarcely reached a point 500 feet abreast of the landing when my steering wire parted. I immediately sounded my alarm whistles and rang for full speed astern; but, before my tug could reverse, I struck a coal boat which was the stern boat in a tow of three in charge of the tug Glen Cove. The coal boat sank almost immediately, and I was unable to secure her name."

The cable which parted was made of iron wire around a core of hemp consisting of 6 strands, each strand composed of 6 strands of 7 wires each of 252 in all. All the wires were parted at the break.

The district judge overruled the defense because of testimony offered by the libelant to the effect that the wire cable showed signs of wear. The claimant contends that this finding is so contrary to the evidence that the decree should be reversed. But, adopting the claimant's story, we come to the same conclusion. Its witnesses testified that the cable was of the usual kind and size for the purpose, bought of a first-class manufacturer, inspected twice a week, and now showing no signs of a defect; in other words, the claimant proves no cause for the parting. In the case of the Merchant Prince, Prob. Div. (1892) 179, the Court of Appeals reversed the Admiralty Judge, Sir Charles Butt, and held a collision was not due to inevitable accident. Lord Justice Fry said:

"The burden rests on the defendants to show inevitable accident. To sustain that, the defendants must do one or other of two things. They must either show what was the cause of the accident, and show that the result of that cause was inevitable, or they must show all the possible causes, one or other of which produced the effect, and must further show with regard to every one of these possible causes that the result could not have been avoided. Unless they do one or other of these two things, it does not appear to me that they have shown inevitable accident."

This language was cited with approval by the Circuit Court of Appeals for the Sixth Circuit in The Olympia, 61 Fed. 120, 9 C. C. A. 393, although in that case the court found the collision was due to inevitable accident.

There is testimony in this case that a sudden porting would cause a shock upon the steering cable likely to break it if a little slack, even if it were strong enough for ordinary use. The witnesses of the claimant exactly describe a situation in which a sudden porting was necessary. They admit that in order to clear the canal boat the tug, when within 60 or 70 feet, had to change her course to starboard 6 points. The claimant not having shown any affirmative cause why the cable parted, has it disposed of this possible cause? The pilot says that when 125 feet (a length and a half) away from the canal boat he started to port, and, finding that the tug did not answer, when within 50 to 60 feet he put the helm over hard aport and rang to go full speed astern. We do not believe that the steering rope parted under a gentle porting.

It was because the pilot allowed himself to get so close to the canal boat that a sudden hard-aporting was necessary to clear her. By the exercise of reasonable care the accident could have been avoided and therefore it was not inevitable.

Decree affirmed, with interest and costs.