### THE LACKAWANNA.

(Circuit Court of Appeals, Second Circuit. December 9, 1913.)

#### No. 33.

COLLISION (§ 42*)—LIABILITY—DEFENSE OF "INEVITABLE ACCIDENT"—SUFFICIENCY OF EVIDENCE.

To exonerate a vessel from liability for a collision concededly due to her improper movements, on the ground of inevitable accident, where the real cause of such movements is not shown, she must eliminate liability for all possible causes by showing as to each of them that it could not have been prevented by the proper exercise of reasonable care, and, where important witnesses and evidence are not produced and the omission is not satisfactorily accounted for, the showing cannot be *held* sufficient.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 42; Dec. Dig. § 42.*

For other definitions, see Words and Phrases, vol. 4, pp. 3571–3573.]

Appeal from the District Court of the United States for the Western District of New York.

This cause comes here upon appeal from a decree of the District Court, Western District of New York, dismissing a libel. The action was brought by the owner of the barge Chieftain, which was injured by collision with respondent's steamship Lackawanna. The opinion of the District Judge will be found in 201 Fed. 773.

H. D. Goulder and O. D. Duncan, both of Cleveland, Ohio (Goulder, Day, White & Garry, of Cleveland, Ohio, of counsel), for appellant.

Brown, Ely & Richards, of Buffalo, N. Y. (Harvey L. Brown, of Buffalo, N. Y., of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The collision occurred September 18, 1909, about 11:15 a. m., near the head of the St. Clair river. The steamer Shenandoah was bound up, having two barges in tow, tandem on hawsers; the Chieftain being the first in order. The steamer Lackawanna, unincumbered, was bound down. Near the rapids at the upper end of the river she blew a passing signal of two blasts to the Shenandoah, which the latter answered with two blasts. Both steamers continued on their courses and passed starboard to starboard at a distance of from 100 feet to 200 feet. As the Lackawanna's stern was about clearing the stern of the Shenandoah, she suddenly deviated from her straight course and without warning or apparent cause sheered sharply and broadly over to her starboard into the line between the Shenandoah and Chieftain. She broke the line and, continuing on through the gap, struck her port side on the Chieftain's stem at a point about one-third of the Lackawanna from forward. Further details will be found in Judge Hazel's opinion.

A point is made in the respondent's brief that the Chieftain was in fault for not casting off her towing line; but little is said in support of it, and we think it without merit. The main defense set up is "inevitable accident."

Immediately after the accident the master and chief engineer of the Lackawanna went to the inclosed room where the steam-steering apparatus was located. That apparatus consisted, in part, of a drum around which a chain played. The chain led downward from the drum to a space within an open metal framework fastened to the deck, and there engaged with two sheaves, which were mounted on an idler shaft. The ends of the idler shaft were countersunk $5/8$ of an inch into the under part of the frame; said ends being cut down on their engagement-side to a flat surface so as to engage horizontally with the frame. Pull from the chains brought the idler shaft against the frame and was resisted by the latter. The ends of the idler shaft were kept in place by two metal straps or caps, one at each end, which were bolted to the frame by $5/8$-inch tap-bolts each $1\frac{1}{2}$ inches long; each cap was held by one tap-bolt on each side of the shaft. When there was no pressure from the chain holding the idler shaft against the frame, the caps were calculated to support the weight of shaft and sheaves (about 400 pounds) and hold the shaft from dropping out of place. When the steam-steering room was examined after the accident, it was found that two tap-bolts were gone entirely; no one apparently ever saw or found them. These were located one at the forward end of one cap, the other at the rear end of the other cap. Of the other two bolts, one was bent, the other "burred" or stretched, and the two caps were depending from them. This evidently had allowed the idler shaft to escape from its countersunk recess, and it had apparently turned sideways sufficiently to rise through the open framework and was, with the sheaves, jammed by the chain against the drum. Of course, in such a condition the steam-steering apparatus was out of commission. For further details of the evidence as to method of construction and prior history of the apparatus, its inspection, and experience, reference may be had to the opinion of the District Judge.

Concededly the Lackawanna violated the rules of the road, navigated improperly, and by her erratic movements caused the collision. Therefore, since the Chieftain was free from fault, the Lackawanna is to be held solely responsible for the collision. The law allows her to relieve herself (if she can) of that responsibility by proving that the accident was inevitable in the technical admiralty sense. That is, that it was of such a sort that it would not have been prevented by the use of that degree of reasonable care and attention which the situation demanded. The burden, of course, is heavily upon the vessel asserting such a defense. Sometimes it is established by showing what was the real cause of the accident (in a case like this the real cause of the erratic movements) and further showing that such cause became efficient without any negligence on the part of the ship. The respondent does not contend that it has shown the real cause of the accident.

The defense of inevitable accident has, in some cases, been held to be established, even when the real cause is not definitely ascertained. In all such causes, however, all possible causes have been exhaustively covered, and it has been shown, as to each and all of them, that the proper exercise of reasonable care by owner, master, officers, and crew would not have avoided them.

In the cause at bar the proof relied upon to eliminate liability by covering all possible causes is not satisfactory, by reason of the absence of two material instruments of evidence; their absence not being, as we think, satisfactorily accounted for. The "possible causes" to be accounted for are not the "possible causes" of the jamming of the idler shaft, but the "possible causes" of the Lackawanna's sudden and very broad sheer to starboard. Her wheelsman, manifestly an important witness as to all courses, is not produced. He was with the ship a short time after the accident; there is nothing to excuse his nonproduction except that it is not now known where he is. There is nothing to show that he was ever asked to make any statement, or that any effort was ever made to secure his attendance at the trial, or to keep track of his address, or learn from him, while he was yet with the ship, what means might be availed of to reach him. Of course, if steps had been taken at the proper time to keep track of him, and he had nevertheless disappeared, or perhaps died, sufficient excuse for his nonproduction would be made out. But he is so important a witness that something should have been done to secure him, if possible. The only witness as to helm movements is the master. He says that as his stern was a little bit past or about even with the Shenandoah's stern he ordered "starboard some"; that the wheelsman repeated the order and then told him he could not move the wheel; that witness looked and saw the wheelsman could not move the wheel; and that there was "a little bit port-wheel on the boat at the time." Immediately after came the broad sheer of the Lackawanna to starboard. Her steering chain led straight, as is the practice in ocean steamers, which require the wheel to be turned in the same direction the bow is to take. If the gear broke down with the wheel a little to port, we cannot see why a violent sheer to starboard followed. We are not told whether the rudder was loose or what caused the steering gear to break down.

It may have been the result of a defect in the steering engine or of the steersman's negligent handling of the wheel. These are among the possible causes which are not eliminated.

Moreover, another piece of evidence is not forthcoming, and its absence is not satisfactorily, or indeed at all, explained. Immediately after the accident and the breakdown of the steering apparatus, the master ordered all things kept in statu quo until the insurance representative could · see them. We have not the testimony of what that representative saw, when he did come. Two bolts had come out of the retaining straps, and were not seen when the engineer went to the room immediately after the accident. Two others were still in place, one burred, the other bent. These were removed by the ship's officer. It might be supposed that they would be needed on the trial; but they have disappeared; no effort seems to have been made to preserve them. Respondent's expert witness (a construction engineer) said that if the bolts were present and shown to him he "thought he could probably tell what caused the bolt to come away."

In this condition of the proof we do not think it can be found that all possible causes have been enumerated and satisfactorily accounted for.

The decree is reversed with costs of appeal, and cause remanded with instructions to decree in conformity with this opinion.