## THE J. RICH STEERS.

### (Circuit Court of Appeals, Second Circuit. November 9, 1915.)

### Nos. 46, 47.

1. NAVIGABLE WATERS ☞14—HARBORS—DEPOSIT OF REFUSE—CONSTRUCTION OF STATUTE—UNAVOIDABLE ACCIDENT.

Under Act June 29, 1888, c. 496, 25 Stat. 209, as amended by Act Aug. 18, 1894, c. 299, 28 Stat. 360 (Comp. St. 1913, § 9933 et seq.), prohibiting under penalty the dumping of refuse in New York Harbor, and which provides in section 3 that "neither defect in machinery nor avoidable accidents to scows or towboats * * * shall operate to release the owners and master and employés of scows and towboats from the penalties hereinbefore mentioned," the only defense in case of machinery is an accident which was unavoidable, and neither the breaking of a part not shown to have been inspected, although there was a general inspection, by reason of which a scow dumped part of her load, nor the breaking of a link in a chain shown to have been sound, and which was therefore insufficient for the load put upon it, is sufficient to sustain such defense.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 31–42; Dec. Dig. ☞14.]

2. NAVIGABLE WATERS ☞14—HARBORS—DEPOSIT OF REFUSE—LIABILITY OF VESSEL—"BOAT OR VESSEL USED OR EMPLOYED."

Under section 4 of act of June 29, 1888, which provides that "any boat or vessel used or employed in violating any provision of this act shall be liable to the pecuniary penalties imposed thereby," a tug which had no other connection with the violation than that of towing the offending scow is not used or employed in such violation.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 31–42; Dec. Dig. ☞14.]

Appeal from the District Court of the United States for the Southern District of New York.

Suits in admiralty by the United States against the steam tug J. Rich Steers and scow No. 8 H. S. Inc., Henry Steers, Incorporated, claimant, and against steam tug Princess, Peter Cahill claimant, and scow

Guiding Star, John G. Mulligan claimant. Decrees for respondents, and libelant appeals. Modified.

Appeals in two cases from decrees dismissing libels against tugs and tows under the act of June 29, 1888, as amended, to prevent injurious deposits within New York Harbor and adjacent waters.

H. Snowden Marshall, U. S. Atty., of New York City (E. B. Barnes, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Charles Thaddeus Terry, of New York City (Edward Ward and W. McMahon, both of New York City, of counsel), for the J. Rich Steers and another.

Harrington, Bigham & Englar and T. C. Jones, all of New York City, for the Guiding Star.

Foley & Martin, William J. Martin, and G. V. A. McCloskey, all of New York City, for the Princess.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. [1] The act of June 29, 1888, as amended by the act of August 18, 1894, provides that no refuse, dirt, ashes, etc., shall be deposited in the tidal waters of New York harbor or its adjacent or tributary waters, but that they shall be dumped within such limits as shall be prescribed by the Supervisor of the Harbor. Congress was authorized to enact this law under its power to regulate commerce.

Section 3 provides:

"And any deviation from such dumping or discharging place specified in such permit shall be a misdemeanor, and the owner and master, or person acting in the capacity of master, of any scows or boats dumping or discharging such forbidden matter in any place other than that specified in such permit shall be liable to punishment therefor as provided in section one of the said act of June twenty-ninth, eighteen hundred and eighty-eight; and the owner and master, or person acting in the capacity of master, of any tug or towboat, towing such scows or boats shall be liable to equal punishment with the owner and master, or person acting in the capacity of master, of the scows or boats; and, further, every scowman or other employé on board of both scows and towboats shall be deemed to have knowledge of the place of dumping specified in such permit, and the owners and masters, or persons acting in the capacity of masters, shall be liable to punishment, as aforesaid, for any unlawful dumping, within the meaning of this act or of the said act of June twenty-ninth, eighteen hundred and eighty-eight, which may be caused by the negligence or ignorance of such scowman or other employé; and, further neither defect in machinery nor avoidable accidents to scows or towboats, nor unfavorable weather, nor improper handling or moving of scows or boats of any kind whatsoever shall operate to release the owners and masters and employés of scows and towboats from the penalties hereinbefore mentioned."

Section 4 provides:

"* * * Any boat or vessel used or employed in violating any provision of this act, shall be liable to the pecuniary penalties imposed thereby, and may be proceeded against, summarily by way of libel in any district court of the United States, having jurisdiction thereof."

With the law in this condition the forward middle pocket of scow No. 8, in tow of the tug J. Rich Steers, dumped its contents before

reaching the dumping ground. This was due to the breaking of a pawl which prevented the chain holding the bottom doors of the pocket closed from running out. The scow Guiding Star, which had been towed by the tug Princess to Edison's plant in South Brooklyn and there laid up to await a change of tide, dumped her first forward pocket in the absence of the tug, as the result of the breaking of a link in the bridle chain which held the bottom door closed. There was evidence of general overhauling and inspection of the scows without discovery of any defect in their appliances. The District Judge dismissed the libel against the tug Steers and Scow No 8, saying:

"Here, though the scow had been recently overhauled and also inspected immediately before going out, the scow dumped because the pawl suddenly broke. Defective machinery is by the terms of the statute no excuse. I think, however, that defective machinery means machinery unsuited for the purpose or out of repair and does not refer to a sudden breaking down of properly installed and inspected machinery. In this case, therefore, the libel should be dismissed."

. He dismissed the libel against the tug Princess and scow Guiding Star, saying:

"At the trial I dismissed the libel in the case of Tug Princess and Scow Guiding Star because the scow had been overhauled the month before the accident and inspected that day. The dumping was occasioned apparently by the sudden breaking of one of the bridle chains and I deemed the accident unavoidable."

Congress evidently did not intend the prohibition to be absolute. If it had the specification of certain things which should not be defenses would have been useless and unmeaning. We think machinery adequate, appropriate, properly installed, and properly maintained must have been presupposed. From the provision that avoidable accidents shall be no excuse it is plainly to be implied that accidents which are unavoidable shall be a defense. Accordingly, we think that the only defense in the case of machinery is a defect that is unavoidable. Let us apply the act so construed to the cases in hand. In each the dumping resulted from a breaking down of the machinery of the scow. In the case of scow No. 8 no sufficient examination of the pawl was made either before or after it broke, nor was the court informed of the character of the pin or support upon which it was pivoted nor whether the pawl itself or the pin or support broke and what the break showed as to the character and condition of the iron. This was quite inadequate proof of unavoidable accident.

In the case of scow Guiding Star a link in the chain parted. The testimony, however, was positive that there was no defect in the link at all, the necessary conclusion being that it broke because insufficient for the load put upon it. The District Judge erred in treating this as an unavoidable accident. If in this way damage had been done to another vessel in a collision the accident could not have been treated as inevitable. To establish such a defense it is necessary either to show the precise defect which caused the accident and that the defendant was not wanting in any lack of ordinary care in relation to it or else to show all possible causes and that the defendant was not wanting in ordinary care as to any one of them. The Edmund Moran,

180 Fed. 700, 104 C. C. A. 552; The Lackawanna, 210 Fed. 262, 127 C. C. A. 80.

[2] We think, however, that the libels against the tugs were rightly dismissed. Section 4 of the act personifies the vessel and makes her liable to the pecuniary penalties if "used or employed in violating any provision of this act." The pecuniary penalty is a fine of not less than $250 nor more than $2,500 as prescribed in section 1. Judge Addison Brown in the case of The Emperor (D. C.) 49 Fed. 751, held that a tug which had no other connection with the violation than that of towing the scow, was not so "used or employed." We approve his decision. On the other hand, Judge Benedict held in The Bombay (D. C.) 46 Fed. 665, that a steamer going down the harbor whose firemen dumped ashes into the river was so "used and employed." We approve this decision also. Accordingly, the libels should have been sustained against the scows, as being so used and employed. The decrees are modified by directing the court below to impose a penalty of $250 against each scow.