## In re REICHERT TOWING LINE.

### RICE v. BROOKLYN ASH REMOVAL CO.

(Circuit Court of Appeals, Second Circuit. April 24, 1918.)

#### Nos. 213, 214.

1. NEGLIGENCE ⬤121(5)—ACTIONS—BURDEN OF PROOF.
   In tort cases, one relying on inevitable accident as a defense must either point out the precise cause, and show that he was in no way negligent, or must show all possible causes, and that he was not in default in connection with any one of them.

2. SHIPPING ⬤209(3)—LIMITATION OF LIABILITY—EVIDENCE.
   In a proceeding by the owner of a tug, under Rev. St. §§ 4283–4285 (Comp. St. 1916, §§ 8021–8023), for limitation of liability for injuries to the tow, resulting when the tug's crank pin broke, evidence held insufficient to show that the breaking was the result of an inevitable accident, but to indicate that it resulted from the insufficient size of the shaft to stand the stress necessarily imposed on it.

3. SHIPPING ⬤79—LIABILITY.
   The owner of a tug having vessels in tow is primarily liable for injuries thereto, while a second company, which, under a contract with another to tow the vessels, engaged the services of the tug, is secondarily liable.

4. SHIPPING ⬤205—LIMITATION OF LIABILITY.
   A towing company, which engaged another to tow vessels that it was under contract to tow, cannot take advantage of Rev. St. §§ 4283–4285 (Comp. St. 1916, §§ 8021–8023), providing for limitation of owners, etc., because it was neither owner nor charterer pro hac vice.

5. SHIPPING ⬤208—LIMITATION OF LIABILITY.
   Though an accident to a tow was the result of negligence, the owner of the tug is not, under Rev. St. §§ 4283–4285 (Comp. St. 1916, §§ 8021–8023), liable beyond the value of the tug, where it was without knowledge of the defect causing the accident.

6. SHIPPING ⬤209(3)—LIMITATION OF LIABILITY—BURDEN OF PROOF.
   The owner of a vessel, seeking to limit its liability, under Rev. St. §§ 4283–4285 (Comp. St. 1916, §§ 8021–8023), has the burden of proving it was without knowledge or privity of the defect causing the accident.

7. SHIPPING ⬤209(3)—LIMITATION OF LIABILITY—EVIDENCE.
   In a proceeding where the corporate owner of a tug, whose crank pin broke, allowing its tow to drift on the rocks, sought to limit its liability,

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

under Rev. St. §§ 4283–4285 (Comp. St. 1916, §§ 8021–8023), to the value of the tug, evidence *held* insufficient to show that the officers of the corporate owner were not aware of the insufficiency of the crank pin.

Appeals from the District Court of the United States for the Eastern District of New York.

Libel and petition by the Reichert Towing Line, Incorporated, owner of the steam tug James Roy, for limitation of liability, to which the Home Insurance Company and others answered, filing claims, consolidated with a libel by Jacob Rice against the Brooklyn Ash Removal Company, which brought in the petitioner and the Moran Towing & Transportation Company. From a decree limiting liability, etc., Jacob Rice, libelant, appeals, as did the claimants in the limitation proceedings. Reversed and remanded, with directions.

Macklin, Brown & Purdy, of New York City (P. M. Brown, of New York City, of counsel), for appellants.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for appellee Brooklyn Ash Removal Co.

Foley & Martin, of New York City (William J. Martin and G. V. A. McCloskey, both of New York City, of counsel), for petitioner.

Park & Mattison, of New York City (Samuel Park and H. E. Mattison, both of New York City, of counsel), for appellee Moran Towing & Transportation Co.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. This is a petition of the Reichert Towing Line, Incorporated, owner of the steam tug James Roy, for a limitation of liability under sections 4283–4285, U. S. Revised Statutes (Comp. St. 1916, §§ 8021–8023). January 5, 1915, the tug took in tow four scows loaded with dirt and ashes, in two tiers of two boats each, from Long Dock, Erie Basin, through Buttermilk Channel, East River, and Hell Gate, bound for Flushing creek. At about 10 a. m., in perfectly clear weather and light wind, when about 80 to 100 feet off Negro Point, the crank pin of the crank shaft broke, and the flood tide carried tug and tow on Scaly Rocks, causing the loss of the boats Mathilde R. and Bump, and damage to the boats H. B. Hornbeck and Frank C.

The petitioner ascribes the disaster to inevitable accident, while the answers of the insurers of the Mathilde R. and of the owners of the other three boats allege that the tug was unseaworthy and insufficient and deny that the petitioner was without privity or knowledge. Subsequently the owner of the Mathilde R. filed a libel against the Brooklyn Ash Removal Company, charterer of the boat, which brought in the petitioner, the Reichert Company and the Moran Towing & Transportation Company under the fifty-ninth rule, charging the Reichert Company with using an unseaworthy and insufficient tug and the Moran Company, which was under a contract for towage of all the Ash Removal Company's boats for a period of five years from January 3, 1914, and which employed the tug James Roy, with liability for the negligence of the owners of that boat, as its agents.

The Moran Company answered the libel, alleging that the disaster was due to inevitable accident, viz. the breaking of the crank pin of the tug James Roy, and that if the accident were held not to be inevitable, then that the owners of the tug were solely responsible because of failure to supply a seaworthy and efficient tug. The petitioner surrendered the tug, which was sold, and the proceeds, deducting expenses, were paid into the registry of the court, in the sum of $320.20. Both causes were tried together.

[1-3] Liability turns upon the question whether the breaking of the crank pin was due to inevitable accident. The tug was built in 1869, rebuilt in 1901, and purchased by the petitioner in 1907. She had a single high pressure cylinder 20x20, and when built was allowed to carry 80 pounds of steam on the original boilers, which was afterwards increased to 124 pounds on the new boilers. At the time of the disaster she was carrying 115 pounds and running at half stroke, which diminished the pressure. The main shaft was 6 inches in diameter and the crank pin, made of hammered steel, was 4½ inches in diameter. It was put in to replace another steel crank pin of the same dimensions, which had broken in November, 1911. The break was near the after end of the pin; the metal showing no sign of flaw. The shoe of the rudder was bent to one side, and the tips, ⅞ inches thick, of two cast-iron adjoining blades of the propeller, were broken off.

There was testimony that, in view of the increase of steam pressure on the boilers from 80 to 124 pounds, the crank pin should have had a diameter of at least 6½ inches, and it was also shown that at the time the new crank pin was put in the prevailing practice was to supply tugs with a boiler pressure like that of the James Roy with crank pins not less than 6 inches in diameter. The strength of the pin increases in proportion to the cube of the diameter.

The District Judge found from the expert testimony that for the required margin of safety of five to one, the bending stress, which is the dangerous one in the case of a crank pin, required a diameter for metal having the tensile strength of this pin, a very little over 4½ inches, viz. 4.59 for a steam pressure of 115 pounds, and 4.56 for a pressure of 112 pounds. This is a small difference, but the owner must take the risk of it.

At the time of the disaster the tug, with a tow quite usual for her, in the center of a favorable tide, carrying 115 pounds, but diminished by proceeding at half stroke, broke this crank pin. Unless caused by inevitable accident, it is plain that the crank pin was insufficient, and the tug unseaworthy. The owner says it was caused by the propeller striking a submerged log. This is pure conjecture, there being not the least affirmative evidence of it, and we reject the explanation as improbable. The propeller was of cast iron, and pitted and discarded for insufficiency about a year afterwards. The tips of two adjoining blades ⅞ inches thick, breaking by striking a submerged log, would immediately relieve the shaft and crank pin from any pressure at all. It is suggested that the log got fast between the propeller and the rudder post, where there is a clearance of but a

few inches. In that case other blades of the propeller would have struck the log, and they, or indeed the whole propeller itself, would have been carried away before this steel pin would have broken. The bending of the rudder shoe, which is pointed out as evidence of the log having been jammed there, is entirely consistent with the tug striking on the rocks. If conjecture is to be resorted to at all, we think it would be much more probable the shaft had got out of alignment. However, even in tort cases, where there is no contractual liability, one relying upon inevitable accident as a defense must either point out the precise cause, and show that he is in no way negligent in connection with it, or he must show all possible causes, and that he is not in fault in connection with any one of them. The Merchant Prince [1892] Prob. Div. 188; The Edmund Moran, 180 Fed. 700, 104 C. C. A. 552; The Lackawanna, 210 Fed. 262, 127 C. C. A. 80; The J. Rich. Steers, 228 Fed. 319, 142 C. C. A. 611. The presumption of fault the Reichert Company has not overcome, and therefore it must be held liable for negligence in the limitation proceeding, and liable primarily because of the unseaworthiness of its tug in the subsequent suit brought by the owner of the Mathilde R.; the Moran Company being secondarily liable because of its towage contract with the Ash Removal Company, and the Ash Removal Company, by the concession of its proctors, liable for any deficiency.

[4-7] The Moran Company cannot take advantage of the laws limiting the liability of shipowners, because it was neither the owner nor the charterer pro hac vice of the tug James Roy. Although the Reichert Company has been held liable for negligence, it will not be liable beyond the value of the tug, if it was without knowledge or privity of the insufficiency of the crank pin. The burden of proving this is on it. Its officers knew of the prior breaking of a steel crank pin of the same size, and no sufficient explanation of that accident is given. They do not show whether they knew the size of the pin, or whether they knew the prevailing practice as to the size of such pins, nor whether, if they did, they made any inquiry whatever as to what the requirements of such crank pins should be, in view of the prevailing practice of employing a much stronger one. Although the boat had been inspected by the United States local inspectors some three or four months before the accident, and the owners employed an engineer to supervise their equipment from time to time, we do not think that they have discharged the burden of proving their want of knowledge or privity.

The decrees are reversed, and the court below is directed to enter a decree in the limitation proceeding, denying the petition, with costs, and a decree in the suit of Rice against the Brooklyn Ash Removal Company in favor of the libelant against the Reichert Towing Line primarily, the Moran Towing & Transportation Company secondarily, any deficiency to be recovered of the Brooklyn Ash Removal Company, with the usual order of reference; costs of this court to the libelant in the same order.