## THE CITY OF CAMDEN.

### WILMINGTON STEAMBOAT CO. v. EDMISTON et al.

(Circuit Court of Appeals, Third Circuit. March, 1923.)

No. 2975.

1. **Collision** ⊂⇒122—Presumption of unseaworthiness arises from collision where nothing but unseaworthiness can explain accident.

A presumption of unseaworthiness arises where a vessel collides with another from unknown causes and nothing but her unseaworthiness can explain the accident.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Collision ☞123—Burden of proving "inevitable accident" on one alleging it as defense.**

To sustain a defense of inevitable accident in a suit for collision, the one alleging it has the burden of proof and must prove, either the cause of the accident and that the result of that cause was inevitable, or show all the possible causes, one of which must have produced the accident, and that none of these possible causes could have been avoided.

**3. Collision ☞125—Evidence held not to show collision inevitable accident.**

In a proceeding by owners of a steam tug to limit liability and to libel another vessel with which the tug had collided, evidence that the steering gear of the tug got out of order and that after the accident a nut was found missing on one of the cylinders of the steering engine, even if this caused the accident, *held* insufficient to prove that the collision was an inevitable accident.

**4. Collision ☞25—Owners may limit liability for collision resulting from unseaworthiness due to negligence of repairer.**

Individual and corporate owners not expressly warranting the seaworthiness of a vessel, though unable to overcome the presumption of unseaworthiness created by the unexplained collision of such vessel with another, are entitled to limitation of liability under Rev. St. § 4283 (Comp. St. § 8021), for damage for collision resulting from conditions to which they were not privy or of which they had no knowledge, regardless of the negligence of third persons employed by them to make examination and repairs, if they exercised due diligence in selecting experienced, reputable, and trustworthy persons.

**5. Collision ☞25—Owners held to have exercised due diligence to make steam tug seaworthy, entitling them to limitation of liability.**

Where, the summer before a steam tug collided with another vessel due to the tug's defective steering gear, the tug was completely overhauled by a reputable shipbuilder, the steering gear being repaired by another concern of good reputation and fully tested before and after it was replaced in the tug, and nine days before the collision it was inspected by two United States marine inspectors and found in good condition, the owners exercised due diligence in making the tug seaworthy and were entitled to limit their liability to the value of their interests in the vessel, under Rev. St. § 4283 (Comp. St. § 8021).

**6. Shipping ☞209(3)—Evidence held to show that master and crew of steamer used due diligence to avoid collision with tug.**

In a proceeding by owners of a tug to limit liability and to libel a steamer with which the tug collided due to tug's defective steering gear, evidence *held* to show that the master and crew of the steamer exercised due diligence to avoid collision and that she was therefore not liable for damages to the tug.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Libel by Alice H. Edmiston and others, owners of the steam tug Neptune, with petition for limitation of liability, contested by the Wilmington Steamboat Company, owner of the steamer City of Camden. From a decree for libelants, libelees appeal. Reversed and remanded, with directions.

Lewis, Adler & Laws, of Philadelphia, Pa. (Otto Wolff, Jr., and John F. Lewis, both of Philadelphia, Pa., of counsel), for appellants.

Howard M. Long, of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DAVIS, Circuit Judge. The appellees filed a libel and petition to limit their liability in the above-stated cause, and at the same time contested their liability and that of the steam tug Neptune for any loss or damage resulting from a collision between the Neptune and the steamer, City of Camden, in the Delaware river opposite Philadelphia on the early morning of October 18, 1919. The Neptune was going down the river, several hundred feet from the pier line of the Pennsylvania shore on her way to Marcus Hook, and the City of Camden was on her way from Wilmington to Philadelphia, 100 to 200 feet farther from the shore line than the Neptune. If they had maintained their respective courses, they would have passed each other port to port in safety. When the boats were somewhere between 200 and 400 yards apart, the steering gear of the Neptune "became unmanageable" and she sheered to her port across the course of the City of Camden. She immediately blew a danger signal and reversed her engines to full speed astern. This signal was answered by the City of Camden, which likewise reversed her engines to full speed. The headway of the tug was stopped at a point immediately in front of the city of Camden, which was slowing down; but there was not sufficient time to get the tug to start astern nor for the steamer to come to a complete stop before she struck the starboard side of the tug a little forward of amidship, cutting the hull to below the water line. The steamer backed away and the tug started astern, but the water rushed into the opening, and the tug sank within seven or eight minutes in about 33 feet of water. The Neptune was raised four or five weeks afterward from the bottom of the river and was taken to Delanco, N. J., by the J. E. Brenneman Company, which subsequently libeled her for $831.53 due for that service. On account of that libel, together with information and belief that the City of Camden was about to present a claim of $14,500 for damages received by it as a result of the collision, the appellees filed this libel in which they prayed that a monition be issued to the City of Camden, the Wilmington Steamboat Company, her owner, and to the J. E. Brenneman Company, and if any liability should be adjudged against them, they then prayed that their liability should be limited to their respective interests in the Neptune in accordance with the provisions of section 4283, Revised Statutes of the United States. Compiled Statutes, § 8021, and Admiralty Rule 56 (40 Sup. Ct. xxi) of the Supreme Court. The Wilmington Steamboat Company filed an answer and claim to the extent of $14,300, putting in issue both the appellees' right to limited liability and their claim to exemption from any liability for themselves or the Neptune. Elaborate proofs were submitted to the District Court, which decreed that the appellees were free from any fault or negligence causing or contributing to the collision, that they and the Neptune were not liable for any loss or damage resulting from the collision, and that the appellees recover one-half of their costs from the Wilmington Steamboat Company. From this decree the Wilmington Steamboat Company has appealed.

[1] The first question to be considered is the alleged negligence of the appellees in taking reasonable precaution to guarantee the sea-

worthiness of the "Neptune" and also the negligence of the master and crew in her management. Seaworthiness in this case centers in and about the steering gear and the negligence of the captain and crew relates to their management of the "Neptune" at the time her steering gear became unmanageable. There is no evidence of what actually happened to the steering gear of the "Neptune." It is undisputed that it suddenly became "unmanageable." This doubtless caused her to sheer across the course of the "City of Camden." At least, there is no other sufficient explanation of this uncontrolled movement. From this action her unseaworthiness is presumed and presumption alone will sustain a recovery in a case where a vessel sinks or brings about a collision from an unknown cause, where nothing but her unseaworthiness, as in this case, can explain the accident. "The presumption of unseaworthiness arises where the only inference in the circumstances is that of unseaworthiness," where the circumstances surrounding the accident exclude all other inferable causes. "The Transit," 250 Fed. 71, 72, 162 C. C. A. 243, and cases there cited.

[2, 3] Was the collision due to "inevitable accident"? The burden of showing this was upon the appellees. In order to do this it was necessary to show the cause of the accident and that the accident resulting from that cause was inevitable, or to show all the possible causes, one or the other of which must have produced the accident, and that no single one of these possible causes could have been avoided. The Edmund Moran, 180 Fed. 700, 104 C. C. A. 552; The Lackawanna, 210 Fed. 262, 127 C. C. A. 80; In re Reichert Towing Line, 251 Fed. 214, 163 C. C. A. 370. The evidence conclusively shows that the steering gear got out of order and became unmanageable and the Neptune in consequence sheered and caused the collision. Exactly what caused the steering gear to become unmanageable is not known. Three or four weeks later, when the boat had been raised and taken to Delanco, it was discovered that a nut was missing from one of the valves or cylinders of the steering engine, but from which valve, and when it came off, if it was ever on, the testimony does not disclose. It is a surmise only that its absence caused the steering gear to become unmanageable. If, however, it be assumed that the absence of the nut caused the steering gear to become unmanageable, it has not been shown that this cause could not have been avoided. Its coming off might have been due to a number of causes. It might have been too large or not screwed on tightly in the first place, or the threads might have been worn or stripped. This was an important piece of machinery of the tug, and it has not been shown that the nut could not have been made so secure that it would not have come off. Consequently the appellees have not shown that the collision was an inevitable accident.

There is no evidence sufficient to establish negligence under the circumstances on the part of the master or crew in the management of the Neptune at the time of or after the steering gear became out of order.

[4] Notwithstanding their failure to overcome the presumption of unseaworthiness, have the appellees the right to limit their liability? Section 4283, Revised Statutes of the United States, provides that the liability of the owner of a vessel for loss by collision incurred or done without the privity or knowledge of the owner shall not exceed the value of the interest of the owner in the vessel and her freight then pending. The damage in question resulted from the collision. Did this collision occur with the privity or knowledge of the appellees within the meaning of the statute? We proceed upon the presumption that the vessel was unseaworthy. The determination of privity or knowledge on the part of the appellees depends upon whether or not they exercised due care and caution to put and maintain the Neptune in a seaworthy condition. They might have done so, and yet the tug notwithstanding might have been unseaworthy. Individuals and corporations, not expressly warranting seaworthiness of a vessel, are entitled to limitation of liability for damage done by collision resulting from conditions to which they were not privy or of which they did not have knowledge, regardless of the negligence of third persons employed by them to make examination and repairs, provided they in good faith exercised due diligence in selecting experienced, reputable, trustworthy persons. The Tommy, 151 Fed. 570, 81 C. C. A. 50; Eire Lighter No. 108 (D. C.) 250 Fed. 490; Pocomoke Guano Co. v. Eastern Transportation Co. (C. C. A.) 285 Fed. 7.

[5] Did the appellees exercise due diligence in making the Neptune seaworthy? During the summer before the accident she was completely overhauled at the shipyard of the Delanco Shipbuilding Company, a reputable company, at a cost of $8,692.48. The steering gear was sent by the Delanco Shipbuilding Company to the yard of Quigley & Dorp, a company of good reputation and large experience in repairing steering gears. It was repaired there. This company overhauled the pistons, valves, cylinders, rod connections, and in fact "repaired the engine and everything that was necessary" at an expense of $414.16. It was then tested out in the presence of representatives of the Independent Pier Company, one of the appellees here. The steering gear engine was returned and the steering gear was put together. Thereafter "steam was turned on, the steering gear was operated both ways." "Quite a number of tests were made" and its condition was pronounced "first class." Mr. Samuel A. Mills, who had been a United States marine inspector, attached to the Philadelphia office for 17 years, testified that he, and Frank H. Demke, another United States marine inspector, made an inspection of the Neptune, including her steering gear, October 9, 1919, nine days before the collision and six days before she left the shipyard. It took him five hours to make the inspection. He found the Neptune, including the steering gear, in good condition. We are satisfied that the appellees used due care to make the Neptune seaworthy and did all that they could reasonably be required to do. They are accordingly entitled to limit their liability to the value of their interest in the vessel.

[6] This brings us to the final question: The liability of the City of

292 F.—7

Camden. This depends upon whether she used due care to avoid the accident after the Neptune began to sheer across her course or whether she did not and is guilty of negligence contributing to the accident. When the Neptune began her erratic movement, she blew her danger signal and a signal that she had reversed her engines. Not knowing what the trouble with the Neptune was nor what she would next do, the City of Camden answered the danger signal and also reversed her engines and started them at full speed astern. If her master had known just what the Neptune would do, he could have continued at full speed ahead or changed her course toward the Jersey shore or toward the Pennsylvania shore. If he had done any one of the three, the collision would have been avoided; but not knowing what the Neptune would do next, he did the very natural thing of reversing his engines to full speed astern and thus tried to stop the vessel as soon as he could. We do not see, under these circumstances, how any fault can be attached to the City of Camden. We therefore find that she exercised due diligence and was not liable for any part of the damage done to the Neptune nor to herself, but that the appellees, on the other hand, are liable to the extent of their interest in the Neptune for the damages resulting from the collision.

The decree of the District Court is therefore reversed, and the case remanded, with directions that the two claims be heard and adjudicated and the appellees held liable to the amount of the value of their interest in the Neptune.