Petition of RED STAR TOWING & TRANS-
PORTATION CO.

### THE BRONX.

District Court, E. D. New York.  Feb. 21,
1928.

No. 8482.

Burlingham, Veeder, Masten & Fearey, of
New York City (Chauncey I. Clark and P.
Fearson Shortridge, both of New York City,
of counsel), for petitioner.

Alexander & Ash, of New York City (Ed-
ward Ash, of New York City, of counsel),
for claimants.

CAMPBELL, District Judge.  The steam-
tug Bronx left Ninety-Fourth street, East
River, on October 2, 1925, with two loaded
coal boats in tow astern on a bridle hawser,
bound to West Farms, N. Y.

The two coal boats were made fast along-
side of each other, the Burns Brothers No. 39
being the starboard boat and the Oceanic be-
ing the port boat in the tow.

One end of the bridle was made fast to
the amidship forward bitt of Burns Broth-
ers No. 39, and the other end of the bridle
was made fast to the amidship forward bitt
of the Oceanic.

The hawser was a five-inch manila line
not over two or three months old and having
been used about twice a week.

The tide was flood, the wind light north-
erly, and the weather was overcast.

There was a lookout stationed in the pilot
house of the Bronx, and the master was at the
wheel.

The Bronx with the two coal boats in tow
proceeded from East Ninety-Fourth street
north of Mill Rocks, passing them close to
starboard, and headed down for the Astoria
shore.

The tide was running easterly at about
five knots and carried the flotilla easterly,
until when off Hog Back, about 300 yards
from dredge No. 9, which was moored W.
S. W. of Negro Point, the coal boats took a
sheer, and the hawser parted in the standing
part about 10 inches forward of the knot.

There is a sharp conflict in the testimony
as to the place of the parting of the hawser,
the witnesses on behalf of the claimant in-
sisting that it was the starboard bridle that
parted, while the witnesses on behalf of the
petitioner insisted that it was the standing
part of the hawser that parted; but I am
convinced that the weight of the evidence sup-
ports the petitioner's contention.

After the hawser parted, the Bronx at-
tempted to pick up her tow, but was unable
to reach the boats before the Burns Brothers
No. 39 rode up on the northwestern anchor

chain of the dredge No. 9, and the Oceanic came into contact with the shovel of the dredge and a scow which was alongside the dredge.

The two boats were picked up and again taken in tow.

The No. 39 was beached near .Hell Gate Bridge on Ward's Island, and the Bronx continued with the Oceanic.

The dredge No. 9 was lawfully anchored at the point indicated, and engaged in dredging under a contract with the government.

Under the regulations issued by the Secretary of War (of which the following is one), it was the duty of the master of the Bronx to see that his tow did not pass closer to the dredge than 100 feet: "All vessels and other water craft passing through Hell Gate shall give as wide a berth as practicable to any floating plant under operation therein for channel improvement, either by the United States or by any contractor under the authority and supervision of the United States, and shall in no case pass closer to said plant than 100 feet."

The first question is whether the petitioner is entitled to limit its liability.

The claimant raises two objections to petitioner's right to limit, viz.: (1) Incompetency of the tugmaster; (2) failure to equip the Bronx with a 5½-inch line instead of a 5-inch line.

The first objection was not sustained; on the contrary, it seems to me that the record of the master of the tug was such that the opinion of the president of the petitioner, that the master was competent, was well-founded, and the petitioner was justified in employing him.

The second objection seems to me to be without merit, because, in my opinion, the line did not part because it was too small, but because of the sheer taken by the coal boats. The line was of the size customarily used by petitioner on boats of the same power as the Bronx, and that size has given efficient service.

The line was made by one of the best known makers of lines, and while there undoubtedly was a defect in the line, it was a latent defect and not observable by one handling the line on a boat.

This seems to be clearly shown by the method of showing the defect employed by claimant's expert on the trial, and also from the fact that the line had been used in towing for two or three months without any parting of the line.

I therefore find that the Bronx was seaworthy, properly manned and equipped, and competent to do the work in which she was engaged, and that the petitioner is entitled to limit its liability.

We thus come to the question of the liability for the damage to claimants' boat.

Of course, no presumption of liability arises from the mere fact of the collision with the anchored dredge, because the permission for the dredge to anchor and to have the scow alongside of her did not give her all the privileges of a vessel at anchor on an anchorage ground. The Chauncey M. Depew (D. C.) 59 F. 791; Merritt & Chapman D. & W. Co. v. Cornell Steamboat Co. (C. C. A.) 185 F. 261. But the Bronx is liable to the owners of the coal boats which she had in tow for the damages sustained by them in allowing the boats to come into contact with the dredge or the scow, unless for some reason beyond her control she could not prevent it.

The general location of the dredge was known, and the regulations of the Secretary of War were legally issued.

The petitioner defends on the ground of inevitable accident.

To sustain the defense of inevitable accident, the petitioner must either point out the precise cause of the accident and show that it was not negligent in connection with it, or it must show all possible causes, and that it was not at fault in connection with any one of them. In re Reichert Towing Line, 251 F. 214, 217, 163 C. C. A. 370.

The defense of inevitable accident cannot be sustained if it be shown that there was lack of display of nautical skill on the part of the master of the Bronx. The Louisiana, 3 Wall. (70 U. S.) 164, 18 L. Ed. 85; Charente S. S. Co. v. United States (C. C. A.) 12 F.(2d) 412, 413; The Nebraska, 1925 A. M. C. 1629.

The cause to be accounted for in the case at bar does not seem to me to be the parting of the hawser, but the taking of the sheer by the coal boats, which caused the hawser to part. The Lackawanna, 210 F. 262, 127 C. C. A. 80. The Maryland (D. C.) 182 F. 832; The Surf (D. C.) 132 F. 880.

The condition, force, and set of the tide were known to the master of the Bronx, as was also the location of the dredge, and after rounding Mill Rocks the master of the Bronx failed to swing the tail end of his tow far enough toward Astoria, and as he continued on his course in his effort to clear the dredge, lost control of his tow, which made a sheer, causing the line to break and the two coal boats to drop down on the dredge.

I decline to accept the story of the mas-

ter of the Bronx, that he was making no maneuver to port or starboard when the standing part of the hawser parted, as that seems to me in the light of all the testimony to be improbable.

The cause of the accident was the fault in navigation by the master of the Bronx, which resulted in a sudden strain being put on the hawser causing it to part, and this constituted negligence.

The accident was caused by the negligence of the master of the Bronx, and the defense of inevitable accident has not been sustained.

A decree may be entered in accordance with this opinion.