## THE BARBARA RUXTON.
### No. 13407.

District Court, E. D. New York.
Feb. 28, 1933.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Paul Tison, both of New York City, of counsel), for libelant.

Purdy & Purdy, of New York City (William F. Purdy, of New York City, of counsel), for claimant.

GALSTON, District Judge.

The facts are not in dispute. On August 2, 1932, the tug Delmar, bound from New

York to South Amboy with a tow of six light barges made up in two tiers, was proceeding on her own starboard side of the channel. The Barbara Ruxton likewise was on her starboard side of the channel, approaching in the opposite direction towards New York. The vessels were on courses which would have enabled them to pass with clearance. After the Delmar and the Barbara Ruxton passed port to port, about from 100 to 200 feet apart, the Ruxton sheered sharply to port towards the Delmar's tow; and though the Delmar's engines were reversed, the Ruxton continued on under the Delmar's port hawser, and collided with the Reilly and the No. 713, damaging the latter barge.

The sole defense asserted is that of inevitable accident, it being contended that the steering gear had become disabled because a U bolt which fastened the end of the steering cable to the port quadrant arm had broken off, thus causing the steering cable to go adrift.

In support of its defense of inevitable accident, the claimant showed that on July 29 and August 1, 1932, the Barbara Ruxton was in a shipyard for repairs to her rudder shoe. To effect the repairs it was necessary to remove the quadrant. After the repairs had been made, the rudder and quadrant were reassembled. The steering cable was not taken out of the U bolt. The foreman of the shipyard testified that he looked over the U bolt and wire and found nothing out of order. He did admit, however, that he had not tested the U bolt.

The vessel was built in April, 1932. Though there had been no difficulty with the steering gear prior to the day of the accident, nevertheless, as the master admitted, she was, as he described the Ruxton, a "hard steering" boat.

The U bolt was not produced at the trial and the captain testified that he could not find it after the accident, nor could he find the nuts used in tightening the bolt.

The naval architect who designed the vessel was unable to give any explanation or opinion as to why the U bolt let go. There were no means provided for holding the nuts in place.

The defense of inevitable accident rests heavily upon the vessel asserting that defense. As was said in The Lackawanna (C. C. A.) 210 F. 262, 264:

"The law allows her to relieve herself (if she can) of that responsibility by proving that the accident was inevitable in the techni-

cal admiralty sense. That is, that it was of such a sort that it would not have been prevented by the use of that degree of reasonable care and attention which the situation demanded. The burden, of course, is heavily upon the vessel asserting such a defense. Sometimes it is established by showing what was the real cause of the accident (in a case like this the real cause of the erratic movements) and further showing that such cause became efficient without any negligence on the part of the ship. The respondent does not contend that it has shown the real cause of the accident.

"The defense of inevitable accident has, in some cases, been held to be established, even when the real cause is not definitely ascertained. In all such causes, however, all possible causes have been exhaustively covered, and it has been shown, as to each and all of them, that the proper exercise of reasonable care by owner, master, officers, and crew would not have avoided them."

I do not think that the claimant's proofs meet the test of this case. The suggestion that an inherent but unobservable defect in the U bolt was the sole cause of the accident does not follow, since the U bolt itself may have been in perfect condition and yet have worked loose because of the absence of lockwashers or cotter pins to bolt them on. Moreover, as is suggested by the libelant, the threads on the bolt may have stripped and allowed the nuts to come off, or the nuts may have been so tightly screwed as to put an undue strain upon the bolt.

The proofs show that the boat was hard to steer, and turning the steering wheel rapidly to correct the sheer might bring up the rudder with a jolt and lead to the damage.

Much more would be understood if the alleged defective bolt had been produced. The fact that three days before the accident it was necessary to dissemble the U bolt may have resulted in some careless workman failing to screw the nuts sufficiently in place. Certainly, the casual inspection, without test, made by the foreman of the shipyard, is not sufficient proof that the U bolt was properly set and tightened.

The language in Cranberry Creek Coal Co. v. Red Star Towing & Transp. Co. (C. C. A.) 33 F.(2d) 272, 274, is pertinent: "The proof stopped precisely at the critical point; it showed what the defect was, but not what was necessary to detect and provide against it."

The libelant may have a decree. Settle order on notice.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.