122

### THE INGA.

District Court, S. D. New York.
May 20, 1940.

Bigham, Englar, Jones & Houston, of New York City (John M. Aherne and John L. Quinlan, both of New York City, of counsel), for petitioner.

E. C. Sherwood, of New York City, for claimant Petersen.

Moran, Galli & McGlinn, of New York City (Frederic J. Locker, of New York City, of counsel), for claimant The Travelers Ins. Co.

Lawrence Berenson, of New York City, for claimants Scharff.

Platow, Lyon & Stebbins, of New York City (Henry V. Stebbins, of New York City, of counsel), for claimant, Bernardine.

GALSTON, District Judge.

The petitioner seeks to limit liability and exoneration from liability with respect to an explosion which occurred on his pleasure yacht Inga on July 14, 1938. The accident occurred while the yacht was undergoing repairs at the shipyard of one Petersen in Nyack, New York. The claimants are Arthur Scharff, a minor, who was a guest aboard the Inga at the time; Ralph Bernardine, an employee of Julius Petersen, the shipyard owner; Travelers Insurance Company, the compensation insurer of Petersen; and Julius Petersen, the employer of Bernardine.

The Inga was a wooden, raised deck, pleasure cruiser type vessel, 34 feet in length, 9½ feet beam, having a gasoline motor of 150 h.p. with twin ignition located approximately mid-ship under the deck bridge. It was constructed in the year 1927.

On the bridge deck there were two hatch covers over the engine room compartment which could be raised to enter that compartment. There were located therein the engine, the starting motor, batteries, wiring, Home Light generator, a Lux fire extinguisher system, and that part of the bilge under the engine. Aft of the bridge deck formed by the hatch covers was a step down into the open cockpit. A fifty gallon gas. tank was located on the starboard and another on the port side of this cockpit.

The Inga was purchased by the petitioner in the spring of 1937. In June, 1938, the petitioner and his son Robert, a boy of sixteen years of age, took the yacht on a cruise from New York to Port Henry and return. They were the sole crew. At Peekskill they picked up the owner's brother, Sam Lackritz and three friends. On the trip up the Hudson River, the Inga put into Catskill Creek for repairs to the toilet, the water-tank and to the searchlight.

On the return trip from Port Henry, while in the vicinity of Watervleit, the vessel ran aground in very low water, so that it was necessary to procure a tug to get her off the strand and tow her across the bar. It does not appear that anyone other than the owner made any inspection of the vessel after that accident. The owner looked into the bilge, but not with respect to the presence therein of gasoline, and also at the hull. He made no examination of the gas tanks or gas lines.

The Inga then went down the river with a crew consisting of the owner, his son and the brother. At a point somewhat north of Catskill the engine started to sputter and speed was reduced; but every time an attempt was made to increase the speed the sputtering recurred. Lackritz said: "I don't know about motors. I know the motor—something happened to the gas and it did not feed the motor right, but I don't know."

They put in at Catskill where the party left the boat. Lackritz requested a man stationed at the Yacht Club yard to instruct a mechanic "to fix the boat up and put her in shape." The party then returned

to New York City by train, leaving the boat in the Catskill Yacht Club yard. The next day or so Sam Lackritz and the owner's son returned to Catskill to board the vessel and sail her home, taking along as a guest the claimant, Arthur Scharff, a young friend of Robert Lackritz.

It is significant that when Lackritz left the Catskill yard he gave no direct instructions to the mechanic but merely to the custodian. He informed the custodian that the engine was not taking gas properly; nothing was said about the trouble at Watervleit.

It appears that the mechanic, Salsbury, worked for about an hour or two on the Inga; that he started the engine, found it was missing, cleaned the spark plugs, the gasoline filter on the carburetor and took water out of the bottom of the bowls of the carburetor. He saw some bilge pumped by Files, his assistant but did not notice the appearance or condition of the bilge. Files was not called as a witness. The two 50-gallon tanks were filled before the Inga left Catskill.

On July 12 Sam Lackritz and the boy Robert, together with the guest Scharff, left on the Inga for New York City. The sputtering trouble again developed and it was necessary to idle the motor and float with the tide from some point north of Poughkeepsie to the Poughkeepsie Yacht Club. At Poughkeepsie, Sam Lackritz retained the services of Stevenson, a garage mechanic. He did some repair work in adjusting the carburetor but did not replace the worn part. In all Stevenson spent about a half to three-quarters of an hour on the vessel, but his actual work on the boat did not consume more than from ten to fifteen minutes. He made no examination of the bilge. The only complaint that Sam Lackritz had made to him was that "he had experienced motor trouble after he left Catskill". Stevenson checked the electrical system but did not check the spark plugs, confining his examination to the distributor and the ignition coils and the ignition system. He told Sam Lackritz that the trouble lay in the "synchronizing of the carburetors".

Leaving Poughkeepsie they proceeded to Nyack, and on the way again the motor sputtered. Opposite Nyack the motor stalled. This time Sam Lackritz thought they were out of gas and on trying the tanks found that they were empty. The

Inga was then towed to the gas station located on the upper dock of Petersen's shipyard, and one hundred gallons of gasoline were put into the tanks. The manner in which this was done is significant. Sam Lackritz said that when they got to the dock he asked the attendant for gas and the attendant gave him the hose because the tide was such that the cockpit was below the dock, and then the tanks were filled. Lackritz then tried to start the motor but failed. He asked the attendant if he had somebody available to start the motor but was informed that there was no one about at that time. His attention was then called to the fact that the lights on the vessel were out, so he went to the switch, tried it and found "they were sort of flickering". He tightened a loose connection and succeeded in getting the lights working.

Sam Lackritz then went ashore, called the owner in New York City by 'phone and reported to him that they had run out of gas outside of Nyack, had pulled into Nyack, had filled the tanks with gas but couldn't start the motor and couldn't find a mechanic to start it; that he wanted to return to New York and that Bob Lackritz wanted to stay over, whereupon the petitioner said: "It is all right for the kid to stay over and you come back. In the meantime you get a mechanic in the morning and have the boat fixed." Robert Lackritz also talked to his father. Robert Lackritz testified that he had heard his uncle say over the 'phone to his father: "We were having the same trouble as we had at Catskill" and in his own talk with his father said: "We had the same trouble at Poughkeepsie." Indeed the petitioner himself admitted that he had been told the same trouble developed as they had to contend with before they reached Catskill. He testified that he told his son Robert to have it properly fixed so it would not happen again.

After Sam Lackritz left for New York and the boys returned to the Inga some one on an adjacent yacht in the basin asked whether the gasoline odor came from the Inga. Whereupon they opened the hatches and Robert put some of the contents of the Pyrene extinguisher into the bilge, together with a bilge solvent, and used the bilge pump for a stroke or two. He discovered that the bilge discharged gasoline. On observing a sign prohibiting pumping in the basin, he discontinued the pumping.

The following morning young Lackritz went ashore, saw Arthur Petersen, the superintendent of the shipyard, and asked "for a man who knew something about carburetors, because I thought we were having carburetor trouble". Bernardine was sent aboard by Petersen. He worked on the distributors and found the points somewhat dirty; he filed them and cleaned them from oil and replaced the covers. He also removed the spark plugs and found that they were coated with a black oil and carbon. He examined the carburetors and made some adjustment, finding, however, that a thread had been stripped. He asked Robert Lackritz, who was at the controls on the bridge deck, to press the starter button, but the engine failed to turn over. Then he went to the starboard and laid a screw-driver across the solenoid terminals. The engine started and the motor ran for a few minutes. On testing he gathered that the pistons were loose. Robert Lackritz accidentally struck the ignition key above the steering wheel and caused the motor to stall. Then, as he pressed the starter button there was a clicking noise; and on pressing it at Bernardine's request a second time there followed a sizzling noise and an explosion near the storage batteries. The engine was not running at the time of the explosion. A second explosion followed, coming under the floor board in the bilge of the engine room. Scharff and Bernardine, the claimants, were severely injured.

A marine electrician testifying as an expert said that the sizzling noise indicated that there had been a loose battery terminal; that battery gas is, of course, very explosive and that the slightest spark would set it off. Describing the home light generator he said that the two-cycle engines wasted gas and that raw gasoline could escape through the broken exhaust pipe adjacent to the batteries. Another electrical expert, Maynard, attributed the explosion to a loose connection at or adjacent to the batteries.

■ The first question to consider is whether the accident was due to negligence of the petitioner. That there was a failure in the electrical system seems very clear. It would appear too, by a fair preponderance of the evidence, that the explosions were due to the ignition of gas resulting from the short circuit in this electrical system. Now in the absence of the owner, his brother Sam was the master of the vessel and should have seen to it that it was properly overhauled at Poughkeepsie by one competent to handle marine engine trouble; and in view of the repeated trouble at Catskill and Poughkeepsie, and again on the way from Poughkeepsie to Nyack, the master of the yacht and also the owner, for he had knowledge of the facts, were negligent in leaving the vessel in the custody and control of a boy of immature years. The claimant, Bernardine, was entitled to know of the successive difficulties that arose following the stranding at Watervliet. He was not so informed, nor indeed was the guest Scharff. The failure so to inform them is a fault clearly binding on the owner of the yacht. Particularly the owner knew, for he had been so informed by Sam Lackritz, that one hundred gallons of gas had been taken on at Catskill and that the gas tanks were empty outside of Nyack. On the most liberal estimate there was a loss of at least thirty gallons on the trip down; that some of this found itself in the bilge seems most probable. Sam Lackritz knew this and explained the gas situation to his brother in the telephone talk from Nyack on the evening before the fire. Another significant thing indicating that there must have been a very considerable leak is that though one hundred gallons were again taken aboard at Nyack on the evening before the fire, only eighty gallons remained after the fire, though the fire did not reach the tanks nor the tubing that led from them to the auto-impulses.

■ From the foregoing view, it must appear that the petitioner is not entitled to exoneration since the clearly defined fault was the proximate cause of the accident. Nor does the petitioner establish his right to limitation, for he had knowledge of the defective condition of the gas distribution and feeding system; and it was with his knowledge and consent that at the time a mechanic was sought to repair the conditions, the vessel was not properly manned. It was imperative to acquaint the Petersen shipyard with the succession of difficulties that had been encountered from Watervleit to Nyack, with particular reference to the substantial loss of gasoline and the presence of gasoline odors or vapors on the vessel. The Republic, 2 Cir., 61 F. 109. The burden of establishing lack of privity or knowledge was on the petitioner. Christopher v. Grueby, 1 Cir., 40 F.2d 8; Eastern Steamship Corp.

126

v. Great Lakes Dredge & Dock Co., 1 Cir., 256 F. 497; In re Reichert Towing Line, 2 Cir., 251 F. 214; The Southwark, 191 U.S. 1, 24 S.Ct. 1, 48 L.Ed. 65.

Accordingly, a decree will be entered denying the petition for exoneration as well as for limitation of liability.

Submit findings of fact and conclusions of law in conformity with the foregoing opinion.