**Petition of SINCLAIR NAV. CO.**

**SINCLAIR NAV. CO. v. F. J. BAUER TOWING LINE, Inc., et al.**

District Court, S. D. New York. June 4, 1928.

A. 90–65; A. 93–242.

1. **Shipping ☞207—Oil tanker, as respects fire occurring while discharging gasoline, held, on petition to limit liability, not negligent in inspecting hose connections.**

Oil tanker, on petition to limit liability, *held* not negligent as respected fire, while discharging gasoline to barge, because of failure to exercise reasonable care in inspecting connections between hose and nipple used in discharging gasoline.

2. **Shipping ☞208—One claiming limitation of liability must show he was without privity in fault from which liability arose (46 USCA §§ 182–187).**

One claiming the statutory right of limitation of liability under Rev. St. §§ 4282–4287 (46 USCA §§ 182–187), has burden of showing that he was without privity in fault from which the liability sought to be limited arises.

3. **Shipping ☞209(3)—Evidence held to establish that officers of corporation owning barge had knowledge of defective hose, precluding limitation of liability.**

Evidence *held* to establish that officers of corporation owning barge had full knowledge as to defective hose used in discharging gasoline to barge, so as to preclude limitation of liability for fire damage resulting.

In Admiralty. Petition by the Sinclair Navigation Company, as owner of the steamship William Boyce Thompson, for limitation of liability, and libel by the Sinclair Navigation Company, owner of the steamship William Boyce Thompson, against the F. J. Bauer Towing Line, Inc., the Kingston Holding Corporation, and the Lambert Transportation Corporation. Decree limiting liability, and decree for libelant against the last two named respondents.

On November 17, 1924, the steamship William Boyce Thompson, an oil tanker of 4,350 tons net register, owned and operated by Sinclair Navigation Company, was moored at the port side of the Sinclair Navigation Company pier at Tremley Point, N. J. The tank barge S. O. No. 44, owned by the Kingston Holding Corporation and operated under charter by Lambert Transportation Corporation, Inc., was moored on the starboard side of the Thompson. Directly astern of the S. O. No. 44, the tug Baxter, owned and operated by F. J. Bauer Towing Line, Inc., was moored alongside the Thompson, with her bow lapping the stern of the barge. Astern of the Thompson the barges America and Emily D. Foster were moored.

During the afternoon the Thompson was engaged in discharging gasoline from the after starboard connection to the barge S. O. No. 44, and also from a connection on the port side to a storage tank ashore. At about 6:30 p. m., while thus engaged, a fire occurred, which quickly enveloped the barge S. O. No. 44, the tug Baxter, and the Thompson. The America succeeded in getting adrift without catching fire. She floated down upon the laid-up fleet owned by the United States of America, which was moored

off Linoleumville, Staten Island, and was soon followed by the two barges and the tug, each in flames. These burning vessels caused substantial damage to the Steamship Sinasta and the Steamship West Loquassuck, moored in the laid-up fleet.

Suits having been commenced against it to recover damages for loss of life and injury to property caused by the fire, Sinclair Navigation Company filed its petition for limitation of liability as owner of the Thompson, pursuant to sections 4283, 4284, and 4285, R. S. (46 USCA §§ 183, 184, 185). It has also filed a libel against F. J. Bauer Towing Line, Inc., owner of the steam tug Baxter, Kingston Holding Corporation, owner of the barge S. O. No. 44, and Lambert Transportation Corporation, bailee in possession of the barge S. O. No. 44, to recover damages to the Thompson. Various claimants have answered the petition for limitation of liability, including the F. J. Bauer Towing Line as owner of the Baxter, Lambert Transportation Corporation as bailee of the barges S. O. No. 44 and America, and Kingston Holding Corporation as owner of these barges. The two proceedings were tried together.

James W. Reid and Burlingham, Veeder, Masten & Fearey, all of New York City (Chauncey I. Clark and A. Howard Neely, both of New York City, of counsel), for petitioner Sinclair Navigation Co.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for F. J. Bauer Towing Line, Inc.

Foley & Martin, of New York City (William Lartin, of New York City, of counsel), for Lambert Transportation Corporation and Kingston Holding Corporation, and for claimants Vincent, Manz, Tiemann, etc.

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Crawley, of New York City, of counsel), for claimant Utility Oil Co.

Charles H. Tuttle, U. S. Atty., of New York City (A. H. Longfellow, Sp. Asst. U. S. Atty., of New York City, of counsel), for claimant United States of America.

THACHER, District Judge (after stating the facts as above). The immediate cause of the fire is unknown. All of the circumstances indicate that a very serious break in the discharge line leading from the ship to the barge occurred on board the Thompson some moments before the fire started. The speed with which the deck of the ship in the vicinity of this connection and the boats moored on the starboard side of the ship burst into flames, the quantity of burning gasoline which was observed whipping around the stern of the vessel from the starboard quarter, and the fact that neither the barge nor the ship showed evidence of explosion, which would explain the mass of flames which almost instantly enveloped the ship, the barge, and the tug, are circumstances from which inference must be drawn that the discharge line had broken and gasoline was being pumped onto the deck, and was running out of the scuppers on the starboard side of the vessel, where the barge and the tug were made fast.

No one can say where the highly inflammable and explosive vapors, formed upon exposure of all this gasoline to the air, may have come in contact with sufficient heat to ignite and explode. Some of the witnesses say they first observed the fire on the ship; others, that the first fire they saw was on the barge. But the question is of little importance, because, once the break in the hose line occurred, fire was but the natural and probable consequence of allowing such a quantity of gasoline, in contact with the open air, to flow on the deck and over the side of the ship. One who allows highly inflammable and explosive gases to escape control, under circumstances which are almost certain to result in the destruction of life and property, can hardly escape liability because those who are injured in a resulting fire are unable to show with precision where and how the fire began. The proximate cause of the fire was the escape of the gasoline, and liability turns upon responsibility for the break in the discharge line, not upon the place where the escaping gasoline first caught fire.

The hose furnished by the barge was solidly connected with a flange 12½ inches in diameter, and in making connection with the ship's piping this flange was attached to the flange of an 8-inch reducing pipe by means of one bolt at the top and three clamps holding the flanges together; a gasket between the two flanges also being used. This method of connection is not unusual, improper, or unsafe, although there is some testimony to the contrary. There is also some testimony to the effect that the connection leaked, notably that of the barge captain and of the witness Koch, whose deposition was offered. I reject Koch's testimony on this question as improbable, and that of the barge captain because he did not impress me as a truthful witness. The tes-

timony of the men who made the connection aboard the ship, and of those who inspected it from time to time, appears to me to be far more credible. From this testimony it appears that five minutes before the fire occurred the bolt and the three clamps were holding the two flanges tightly together, and there was no leakage. Within five minutes a very serious and sudden break must have occurred. That such a break should have occurred in the flange connections is highly improbable. One of the clamps, perhaps, might have become loose, and a slight leak might have developed; but it is quite impossible to infer that all three clamps suddenly fell off the connection, so as to permit a substantial flow of gasoline upon the deck and through the scuppers over the starboard side of the ship.

The weakest point in the discharge line was undoubtedly the connection between the nipple of the hose and the hose itself. That the hose furnished by the barge was unsafe and improper cannot be doubted. Although the hose itself was consumed in the fire, the metal nipple bearing the manufacturer's name was produced at the trial. From this nipple and his sales records the manufacturer was able to identify the type of hose sold and delivered to the Lambert Transportation Corporation as a 3-inch gravity hose designed for use in piping gasoline or oil from one level to a lower level, and not for use under pressure conditions; its use for the latter purpose being discouraged by the manufacturer because of weakness in the nipple and hose connection, which was made by screwing the nipple, carrying a shallow interior thread, onto the end of a fabric-covered hose. Such hose is not subjected to pressure tests, because not intended to be used under pressure. It elongates with use, which has a tendency to loosen the nipple connection. Before the nipple was produced, the claimant attempted to prove by oral testimony that the hose furnished by the barge was a 4-inch hose constructed for use under pressure conditions, and the president of the Lambert Transportation Corporation testified that he did not think it proper to use the kind of hose, which in fact was used, in discharging gasoline from a tanker. If, as seems most probable, the nipple, under pressure and resulting vibrations, worked loose from the fabric covering, the flow of gas upon the deck and through the scuppers over the ship's side, immediately resulting, is entirely consistent with the surrounding circumstances and the nature of the fire which very shortly thereafter occurred, and I feel constrained to conclude that the break in this line was in the connection between the hose and the nipple, and not in the connection between the two flanges.

[1] In behalf of the claimants it is argued that the men on the ship were at fault, in that for a period of five minutes prior to the fire no one inspected the hose connection. These men had no reason to suspect that the hose furnished by the barge was not properly constructed for use under pressure. It was comparatively new, and to all outward appearance a good hose. Its defect was inherent in its internal construction. Under these circumstances, there was no reason to anticipate a break in the connection between the hose and the nipple. Nor do I think that the ship was required to station a man on watch at all times within sight of the flange connection. Inspection was made from time to time, the last not longer than five minutes before the fire occurred, when everything was found to be in order. Under these circumstances I do not think the men on the ship were chargeable with failure to exercise reasonable care in inspecting the connections.

The result is that the petitioner is exonerated from all liability for the consequences of this disastrous fire. A decree in the limitation proceeding to this effect may be entered accordingly.

Coming, then, to the libel which the petitioner has filed against the F. J. Bauer Towing Line, Inc., owner of the tug Baxter, Kingston Holding Corporation, owner of the barge S. O. No. 44, and Lambert Transportation Corporation, bailee in possession of the barge S. O. No. 44. It is entirely clear that the tug had nothing to do with the break in the hose line. Accordingly the libel must be dismissed as against its owner, the F. J. Bauer Towing Line, Inc.

[2, 3] Fault lies with the barge S. O. No. 44, but in answer to the libel its owner and charterer claim the right to limit their liability, and in this connection have amply proved that the barge was a total loss. One who claims the statutory right of limitation under sections 4282–4287, R. S. (46 USCA §§ 182–187), is under the burden of showing that he was without privity in the fault from which the liability sought to be limited arises. In re Reichert Towing Line, 251 F. 214 (C. C. A. 2d); The 84–H, 296 F. 427 (C. C. A. (2d); Petition of Diamond Coal & Coke Co. (D. C.) 297 F. 238, affirmed on opinion below 297 F. 246 (C. C. A. 3d). The president of the corporation owning the

barge, and of the corporation operating it, had full knowledge concerning the purchase of the 3-inch hose and its delivery to the barge. He at first testified that there was no such hose on the barge at the time of the fire, insisting that there was a 4-inch pressure hose, which had been purchased early in November upon the suggestion of the Utility Oil Company. The 3-inch hose was shown to have been purchased on November 1st, and from a careful consideration of the testimony I am satisfied that it was to this 3-inch gravity hose that the president's testimony referred. His brother, who was closely associated with him in the business, and who was in charge of repairs and reconditioning of the barge, saw the 3-inch gravity hose at the time the connection was made to the ship. He also said it was a 4-inch hose. Both witnesses were mistaken, and I think it fair to infer that each was referring to the same hose, namely, the 3-inch gravity hose, which was actually used at the time of the fire, and were mistaken in describing it as a 4-inch pressure hose. If that be the correct inference, they were both in privity with the use which was made of the 3-inch hose. The burden of proving that the managing officers of the holding and operating companies were without privity in the improper use of the 3-inch gravity hose is not sustained.

I am therefore constrained to direct a decree against the Kingston Holding Corporation and the Lambert Transportation Corporation, without limitation of liability. The usual reference will be ordered to determine the amount of the damage.