THE MATTIE.

THE ALVA.

Petition of REICHERT et al.
No. 15819.

District Court, E. D. New York.
May 9, 1941.

746

See, also, 34 F.Supp. 856.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for petitioners.

Foley & Martin, of New York City (James A. Martin and Christopher E. Heckman, both of New York City, of counsel), for damage claimant.

ABRUZZO, District Judge.

The steamtug "Mattie" came into collision with the sand scow "Alva" on December 8, 1939, in the waters of Hell Gate. The "Mattie" was proceeding without any tow and the "Alva" was in the tow of the tug "Bronx No. 4". The petitioners seek a limitation of or exoneration from liability, claiming (1) that the petitioners are entitled to exoneration; and (2) that if they are not entitled to exoneration, they should be granted limitation of liability.

With respect to exoneration from liability, the proof offered indicates that the steamtug "Mattie" was proceeding northeast, along the Astoria shore, going up the Harlem River (p. 11, Rec.). The "Alva" was coming west with the tide (p. 12, Rec.). The "Mattie" intended to steer across the stern of the "Alva" to go to the New York shore to pick up a tow at 96th Street. It is claimed that the captain of the "Mattie" planned his course to cross a couple of hundred feet under the stern of the sand scow "Alva". Having difficulty in turning because of the strong ebb tide, although two men were at the wheel of the "Mattie", the steamtug kept turning to the left and into the sandscow "Alva".

It is uncontradicted that the sand scow "Alva" and the tug "Bronx No. 4" did not vary their course. There is no dispute that this tow was clearly visible to the captain of the "Mattie" and that the sand scow "Alva" and the tug "Bronx No. 4" did absolutely nothing to bring about or help to cause the collision.

A careful analysis of the evidence adduced indicates to the court that the petitioners are not entitled to exoneration from liability.

The "Mattie" claims there was a strong ebb tide prevailing at the time of the collision. Proof was offered that the steering apparatus of the steamtug "Mattie" was in good working order and the engines were operating properly and had sufficient power.

The certificate of enrollment and license issued by the Department of Commerce, Bureau of Navigation, for the "Mattie", was introduced into evidence and marked Petitioners' Exhibit 4. It establishes that she is duly enrolled as a towing tug.

The certificate of inspection issued by the United States Department of Commerce, for this tug, Petitioners' Exhibit 2, authorizes her for towing operations in the waters of the Harbor of New York.

Three weeks before the collision, the steering gear of the "Mattie" was checked by Francis J. Reichert, the shore engineer for the charterer of this tug. This test showed the steering gear was in very good condition (p. 75, Rec.).

The captain was undoubtedly an experienced navigator, who knew the "Mattie" and had been operating her for four or five years through the very waters where the collision occurred.

The contention of the petitioners is that the unusual tide was the sole cause of this collision. The captain, having had many years experience, knew the conditions he was bound to meet in Hell Gate. He testified that he was unable to steer the steamtug as he tried to cross astern of the tow and had to call his deckhand to help him straighten the wheel. In spite of his experience, knowing the conditions he was bound to meet as a skillful navigator, and having handled the steamtug "Mattie" for four or five years, he claims that he was in no way negligent in causing the collision.

The court cannot accept this theory. The captain was admittedly unable to control the "Mattie" enough to keep her from going off her course. He undoubtedly did not allow sufficient room to pass under the stern of the tow. The "Alva" and the tug "Bronx No. 4" were bound west on a steady course, a safe distance off the "Mattie". The collision was caused by the negligence of the captain of the "Mattie" in the manner in which he operated and steered his steamtug. The tide and velocity

of the wind were within the peculiar knowledge of the captain and it was his improper handling of the wheel and his failure to give the "Mattie" sufficient distance to cross astern of the "Alva" and her tow which constituted the negligent acts which caused this collision. A contributing cause may have been that the hand gear was old and outmoded and probably did not respond as quickly as it should have.

The petitioners also contend that at best it was a mistake in judgment on the part of the captain, for which the petitioners could not be liable. They assert that when the owners and operators of a vessel appoint a master having reasonable skill and judgment and there is a mistake of judgment where the mistake is only manifest by the result, and where the master exercised reasonable skill, the owners and operators are not responsible. The Perseverance, 2 Cir., 49 F.2d 785; The Garden City, 6 Cir., 127 F. 298; and The Walter A. Luckenbach, 9 Cir., 14 F.2d 100.

In view of the fact that the court has found that the captain did not use reasonable skill, the petitioners are not entitled to come within the purview of these decisions. It was not simply an honest error of judgment on the part of an experienced tug captain, but his negligence in the operation of the steamtug. The petitioners are not entitled to exoneration from liability.

As to limitation of liability, the statute provides in Chapter 8, 46 U.S.C.A. Section 183, as amended August 29, 1935, et al., as follows: "(a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

The burden of proving their right to limitation of liability is on the petitioners.

It was stipulated between the parties that on December 8, 1939, the date of the collision, no officer or director of the Reichert Towing Line, Inc., was aboard the steamtug "Mattie", nor was the owner of the steamtug aboard. Proof was offered to show that Drew, the captain of the steamtug, was free to use his own judgment as to whether he would proceed to pick up the coal barge at 96th Street, New York City. The weather report for December 8, 1939 (Petitioners' Exhibit 1) specified that no storm signals had been posted. The steering apparatus of the "Mattie" was in good working order and her engines were responding properly. The steamtug was licensed to navigate in the waters of the Harbor of New York. Francis Reichert testified that three weeks prior to the collision he tested the steering gear and it was found to be in good condition.

An employee of the Reichert Towing Line, Inc., received the towing orders at 8 A. M. at the Newtown Creek Office and transmitted the message to Captain Drew. The steamtug was operated by a hand gear. After the accident this was changed.

The steamtug "Mattie" safely reached the 96th Street shore after the collision occurred. In opposing petitioners' claim, the owner of the "Alva" contends that the steamtug "Mattie" was unseaworthy because she was not able to navigate the Hell Gate tide to reach her destination and that two men had to handle the gear just before the accident happened which would seem to indicate that the hand gear was inadequate to cope with the situation.

Undoubtedly, the hand gear did not operate properly at the time of the collision as evidenced by the fact that it was changed thereafter. However, it is inescapable that the steamtug did finally navigate across the Hell Gate channel safely.

The Limited Liability Act was passed for the encouragement of shipbuilding and the employment of ships in commerce, by providing that the owners of ships should not be liable beyond their interest in the ship and freight for the acts of the master or crew done without their privity or knowledge. The privity or knowledge must be actual and not merely constructive. The 84-H, 2 Cir., 296 F. 427, 431. The facts in this case were that the owners employed a contracting company to load a scow. An employee of the contracting company suffered injuries from which he subsequently died. Limitation of liability was permitted because there was no privity or knowledge of negligent acts causing the accident, on the part of the

748

owners. · It was indicated that the court must first ascertain whether liability exists and if so, whether there is privity or knowledge on the part of the owners. The rule is definite as to privity or knowledge which must involve personal participation upon the part of the owner in the· fault or act of negligence causing the loss or injury.

In the Petition of Canadian Pacific Railway Co., D.C., 278 F. 180, 190, it was established that the privity or knowledge within the statute must be that of the managing officers of the corporation. Personal knowledge or means of personal knowledge of conditions likely to produce or contribute to the loss or injury must be shown.

■ There is no evidence that the hand gear in the "Mattie" was defective. It had been in operation four years prior to the collision and the petitioners proved an inspection of this gear some three weeks previous to the collision, showing it to be in working order. After the accident, the steamtug was steered safely across Hell Gate to New York. It is true that the steamtug was old-fashioned and the hand gear was antiquated and outmoded, but the only ground upon which it could be found unseaworthy is that of a defective hand gear, and this was not proved. This antiquity in itself does not make the "Mattie" unseaworthy. The antiquity of the "Mattie" and its hand gear was the only evidence offered to rebut the proof in support of the limitation proceeding.

The cases cited by the claimant do not come within the issues of the case at bar.

In Christopher v. Grueby, 1 Cir., 40 F.2d 8, negligence on the part of the owners was established in permitting a fire hazard to exist in the engine room. The owners of the vessel had places of business on the pier of the ship's home port, and were held not to have established the burden of proving.lack of privity or knowledge.

The unseaworthiness of a tug in The T. J. Hooper, 2 Cir., 60 F.2d 737, was established due to its being improperly equipped in not having a radio receiving set in working order to receive storm warnings.

In The Linseed King, D.C., 24 F.2d 967, the owners were denied limitation of liability. The overcrowding of a cabin was held to be an act of negligence. The boat was used to ferry employees across the river and overcrowding the cabin was deemed to have made "The Linseed King" unseaworthy. Knowledge of the fact was known to the owners. The vessel was operated without a license in violation of the steamship inspection law.

In another case cited by the claimant, it was established that the officers of the corporation owning a barge had full knowledge as to a defective hose used in discharging gasoline to other barges which precluded limitation of liability. Petition of Sinclair Navigation Co., D.C., 27 F.2d 606.

To hold the "Mattie" was unseaworthy, the court would have to indulge in a presumption. It would be necessary to presume that because the hand gear was old and outmoded that that in itself made the "Mattie" unseaworthy. Preclusion of limitation of liability cannot be granted on the theory that the "Mattie" did not have a modern steering apparatus. The court has held that it was the negligence of the captain of the steamtug that caused this collision. A contributing cause was the fact that the wheel had to be handled by two men. There is no evidence to indicate that the failure of the hand gear to operate and respond quickly caused the collision, and there can be no conclusion of unseaworthiness. On the contrary, the evidence shows clearly that the negligence of the captain of the "Mattie" caused the collision.

Even if the position of the claimant could be justified, that the outmoded hand gear made the steamtug unseaworthy, there has been no evidence adduced that the owners of the steamtug "Mattie" had privity or knowledge of this condition.

■ The case at bar comes within the authority of The 84-H, 2 Cir., 296 F. 427. Liability exists in this action because of the negligence of the captain of the "Mattie," but the loss or damage was occasioned without privity or knowledge of the owners. The petitioners have met the burden cast upon them, the damage was caused without their privity or knowledge and the petition for limitation of liability is granted. The usual reference will be ordered to determine the amount of the damage.

Enter decree on notice.